HOME OWNERS' LOAN CORPORATION v. R. S. WILKES, *et ux.*

178 So. 161.
Division A.
Opinion Filed January 5, 1938.

*Blackwell & Knight, A. Y. Clement* and *Inman P. Crutch-field,* for Appellant;

*Shipp, Evans & Kline* and *W. H. Burwell,* for Appellees.

TERRELL, J.—In July, 1934, R. S. Wilkes executed his note to Home Owners' Loan Corporation for $1,360.00 bearing interest at five per cent. per annum, payable monthly at the rate of $10.75. Coeval with the execution of his note, Wilkes executed to the payee his mortgage deed conveying the lands with improvements therein described, the same being his homestead, to secure payment of the note.

The note and the mortgage deed both provided "that time is of the essence of this contract, and that in the event of default in payment of any installment for a period of ninety days, the holder of this note may, at its option, declare all the remainder of said debt due and collectible."

In September, 1936, the mortgagee instituted this suit by bill in equity to foreclose the Wilkes mortgage. The bill of complaint alleged that the defendant (mortgagor) had defaulted in each and every monthly payment since the execution of the note and mortgage except in the payment of a refund of two dollars September 11, 1934, the payment of $40.59 on the principal October 18, 1935, and the payment of $9.41 on interest October 18, 1935. It was also alleged that the mortgagor had refused and neglected to place insurance on the premises as he agreed to do, that the mortgagee had been compelled to do this in the sum of $40.59 and that the mortgagor had failed to pay taxes on the mortgaged premises for the years 1934 and 1935 for which the mortgagee had expended $27.25.

Wilkes answered the bill of complaint wherein he alleged that he had secured the loan from appellant to pay off a

mortgage on his home held by and in favor of the First State Bank of Hialeah which was threatening to foreclose. He further alleged that soon after he secured the loan, he suffered a bodily injury, was confined in a hospital for some time and was for that reason unable to earn a living or to meet his payments on the mortgage, that he is willing and stands ready to do equity and thereupon offers to convey the mortgaged property described in the bill of complaint by trust deed to a trustee appointed by the Court who should hold same, collect the rents therefrom and turn over the entire amount so collected to plaintiff until all arrears on his mortgage are paid, that during the winter months said property would produce a rental of $40.00 per month and during the summer it would produce twenty dollars per month and as further evidence of his good faith, he offers to vacate and surrender said property to the trustee. The answer prays that the foreclosure proceedings be stayed and that the mortgaged property be placed in the hands of the trustee for the purposes stated.

Complainant moved to strike paragraphs six and seven of the answer, being that part offering to do equity, on the ground that they were immaterial and irrelevant, that they stated no defense and contained no equity. Said motion was overruled but on condition that at final hearing, if the allegations of the answer offering to do equity were established, a further decree would be entered suspending the foreclosure proceedings while the terms of the trust deed were being complied with and upon failure to do so, the foreclosure proceedings would be reestablished and proceeded with. From this decree, the instant appeal was prosecuted.

Several questions are argued, but the essential question presented may be stated as follows: When a mortgage deed matures in which time is of the essence of the con-

tract and the mortgagor has defaulted in the payment of principal, interest, insurance, and taxes on the mortgaged property as he agreed to do and the mortgagee has exercised his option to ·foreclose can the mortgagor defeat the fore-closure by interposing the defense of· misfortune, unem-ployment and inability to work and by offering to execute a trust deed in favor of a trustee describing the mortgaged property, the trustee under order of the Court to take the property in charge, collect the rents, and pay them to the mortgagee until the mortgage is discharged and then re-convey the property to the mortgagor.

The chancellor below answered this question in the af-firmative on the theory that the loan in question was se-cured from the Home Owners' Loan Corporation, a Fed-eral agency created to assist home owners in protecting their homes with government loans at a low rate of interest. He further held that as between individuals, the relief prayed for could not be granted, but that as between the government and its nationals, a court of equity should be and was able to grant relief on such a showing.

In our view, the chancellor misconceived the function and powers of the Home Owners' Loan Corporation. It is quite true that it is a Federal agency created to give aid to home owners. It was created by Act of Congress as a separate, distinct entity with power to sue and be sued in the same manner as any other person or corporation. It is authorized to refund or refinance preexisting home mort-gages for a period of three years from June 13, 1933, with bonds or cash, to pay taxes and assessments on home real estate, to provide the necessary maintenance and repairs and to meet the necessary incidental expenses of the trans-action, provided the total advance in bonds and cash in each case shall not exceed 80% of the value of the respective home properties as determined by the appraisal made by

the Home Owners' Loan Corporation. It is authorized to acquire the first mortgage only. All mortgages must be amortized by monthly payments within fifteen years and any mortgage acquired must be in involuntary default on June 13, 1933.

The Act creating the Home Owners' Loan Corporation provides that it "may at any time grant an extension of time to any home owner for the payment of any installment of principal or interest owed by him to the corporation if, in the judgment of the corporation, the circumstances of the home owner and the condition of the security justify such extension," but we find nothing in the terms of the Act providing for a moratorium on the foreclosure of home mortgages, nor is the court authorized to grant indulgences on the foreclosure of such mortgages or determine whether the condition of the home owner or ,the circumstances of the security would warrant an extension. All such powers are vested solely and exclusively in the Home Owners' Loan Corporation.

The chancellor relied on Home Building and Loan Association v. Blaisdell, 290 U. S. 398, 54 Sup. Ct. 321, 78 L. Ed. 413, 88 A. L. R. 1481, to support his decree, but this case had to do with the constitutional validity of the Minnesota Mortgage Moratorium Law and has no bearing on this case. We have nothing like the Minnesota Moratorium Act in this State.

The Home Owners' Loan Act is clear and unambiguous. In so far as the Corporation is authorized to borrow, loan, and collect money, it stands on like footing as any other person or corporation. Its primary purpose was to afford home owners in distress a means of refinancing their home mortgages on longer terms and at lower rates of interest. It was not designed to grant a moratorium on home mortgages or to provide a means of escape from paying them.

The obligation of the mortgagor to pay or the mortgagee to foreclose in accordance with the covenants in the note and mortgage are all absolute and none of them are made contingent on the borrower's health, good fortune, or ill fortune, or the regularity of his employment. In this respect a mortgage to the Home Owners' Loan Corporation is in no different status than one to any other person or corporation and the court can in no wise change the contract or the obligation entered into.

In the early history of equity jurisprudence when the Chancellor was the mouthpiece of the crown and his prerogatives and duties were loosely understood and his decrees could not be resisted, he sometimes acted on the dictates of conscience and what appeared to be natural justice, but today the rules and maxims governing Courts of Equity are as definite and certain as those governing other tribunals and by them the Chancellor is bound rather than by what he conceives to be right and just in a particular case. 10 R. C. L. 262.

. The Home Owners' Loan Corporation is authorized under the Act creating it to grant extensions to the home owner for the payment of any installment on proper showing made and the equitable defense set up in his answer would have been proper as a basis to have sought an extension from it where such discretion is vested, but such extensions are granted at all times in the discretion of the corporation dependent on the circumstances of the home owner and the condition of his security.

Even if a court of equity was authorized to grant the relief prayed for by the mortgagor, the showing for it is not sufficient. He merely offers to deed his home to a trustee to realize the amount due through rents. He does not offer to pay taxes, insurance, and other charges which have accumulated on his home and there is no positive

showing that the rents would pay the amount due or any considerable part of it within any reasonable time.

The decree appealed from was in direct conflict with the contract sought to be foreclosed; it amounts to a suspension of the plaintiff's right to enforce the obligation of his contract and is violative of the express provisions of the Home Owners' Loan Act of 1933. It is accordingly reversed.

Reversed.

ELLIS, C. J., and BUFORD, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.