McCONNELL et ux. v. HOME OWNERS LOAN CORP.
REBOLD et ux. v. SAME.

No. 29227.   Nov. 18, 1941.

Rehearing Denied Feb. 3, 1942.

*121 P. 2d 1001.*

A. L. Emery, of Okmulgee, for plaintiffs in error.

A. M. Frazier, of Dallas, O. K. Wetzel and Hardin Ballard, both of Oklahoma City, and R. A. Hockensmith and John Caruthers, both of Okmulgee, for defendant in error.

BAYLESS, J. Home Owners' Loan Corporation filed two actions in the district court of Okmulgee county for the foreclosure of a mortgage on the home of John McConnell and Netta McConnell, his wife, and on the home of Grant Rebold and Katherine Rebold, his wife. By agreement these cases were consolidated for trial and are appealed jointly and briefed jointly.

We think the issues raised by the pleadings are well stated in the index of the brief of plaintiffs in error, and we set them out as therein stated:

"Contentions of the HOLC:

1st, borrowers breached contract in not paying installments of principal and interest; and,

2nd, borrowers breached contract in not paying taxes and the HOLC paid delinquent taxes; and, therefore,

3rd, HOLC entitled to a decree of foreclosure as a matter of right because time is the essence of the contract.

"Contentions of the borrowers:

1st, HOLC not entitled to a decree as a matter of right; and,

2nd, condition, time is of the essence of the contract, is ultra vires and void because contrary to the Home Owners' Loan Act, referred to herein as the Charter; and,

3rd, borrowers were entitled to 'extension of time', under the Charter, in which to pay installments; and,

4th, HOLC breached contract (a) in refusing to give the borrowers notice of payment of taxes, and (b) in paying taxes which were not delinquent; and,

5th, the clause in the contract for the payment of attorney fees is ultra vires and void; and,

6th, clause in contract for the payment of 6% interest is ultra vires and void; and,

7th, clause in contract for appointment of receiver is ultra vires and void.

Charter—Mason's U. S. Code, Supp. 3, 1932-1934, Title 12, sec. 1464-1468, pp. 354-358."

The record shows that the McConnells borrowed from HOLC $3,038 on November 7, 1934, payable at the rate of $24.02 per month over a period of fifteen (15) years. July 13, 1938, when HOLC instituted its foreclosure action, McConnells were delinquent in monthly

installments in the sum of $298.52 and HOLC had also paid the 1936 and 1937 ad valorem taxes in the amount of $359.91. The record shows that the Rebolds borrowed $1,888 from HOLC on October 24, 1934, payable $14.93 a month over a period of fifteen (15) years. July 6, 1938, when HOLC filed foreclosure action, the Rebolds were delinquent in monthly installments $174.08 and HOLC had advanced the money to pay the 1936 and 1937 ad valorem taxes in the amount of $389.79.

The respective contentions of the parties here may be summarized thus: The mortgagors contend that the HOLC was created as an agency of the federal government for the purpose of lending money to distressed home owners on a liberal and socially beneficial basis; that the respective mortgagors later found themselves unable through circumstances over which they had no control to meet the monthly installments or to pay the ad valorem taxes; that they applied to the HOLC for reasonable extensions of time, wholly within the spirit and purpose of the Congress of the United States in creating the agency, which applications were denied; and that denial thereof was arbitrary, illegal, and contrary to the spirit and purpose of the federal government in creating the agency. The HOLC on its part admits beneficent purpose of the Congress of the United States in creating the agency, but argues that Congress stated in the act the extensions of time which were in a sense obligatory, but left further extensions of time to the discretion of the agency. That in the case of the McConnells, after a passage of some four or five years, the agency had more money invested in the property than at the inception of the loan, and the same was also true with respect to the Rebold property. That the reasonable discretion of the agency dictated that the loans be foreclosed.

Contentions six and seven of the mortgagors, relating to the charging of 6 per cent interest and the appointment of a receiver for the property, are without merit. While the notes and mortgages do provide for 6 per cent interest after delinquency, HOLC admits that the act of Congress restricts interest to not exceed 5 per cent, and points out that in its pleadings and in the judgment only 5 per cent interest was sought. With respect to the authority for the appointment of a receiver the HOLC aptly points out that the trial court refused to appoint a receiver for the properties herein. We agree with HOLC that reservation of the right to charge after delinquency a greater rate of interest than is permitted by law may be ultra vires in the sense that it is in excess of the rate of interest permitted to be charged by the laws of the United States, although not in excess of the rate of interest by contract permitted in Oklahoma, and to that extent may be unenforceable. Nevertheless, the contract is enforceable to the extent of the 5 per cent interest permitted by the act of Congress. In this connection see what we said in Popp v. Munger, 131 Okla. 282, 268 P. 1100, with respect to a similar contention made on loans of the Commissioners of the Land Office. We also agree with HOLC that whether the provision in the mortgage for the appointment of a receiver is enforceable or not in the light of the plea of ultra vires, it has no effect on this action, since no receiver was appointed.

The fifth contention of the mortgagors relates to the validity of the note contract with respect to the provisions of the payment of attorney's fee. The record contains evidence explaining the basis upon which these fees are charged and divided, and it is apparent from the record that not all of the attorneys rendering service to the HOLC in connection with these cases are salaried employees of the HOLC. But if that were not the case, we think that what we said in State ex rel. Mothersead v. State ex rel. Commissioners of the Land Office, 135 Okla. 107, 274 P. 473, applies here. It is not contended or pointed out that Congress did not authorize or did not intend for fees to be charged, and we think it entirely proper to

charge and collect a fee under the record before us.

The fourth contention relates to the failure of HOLC to give notice to borrowers of the fact that it had paid certain delinquent ad valorem taxes, and the further fact that certain of the taxes were not delinquent when paid because of legislation extending the time for the payment of the taxes then due. We think that mortgagors misconstrue the language of the mortgage in the light of the facts in the record when they contend that it was necessary for HOLC to give them notice of its intention to pay the delinquent taxes or to make any demand upon the mortgagors in connection therewith. With respect to the 1937 taxes which mortgagors contend were not delinquent because time for the payment thereof had been extended, we are convinced that HOLC was in good faith in paying the taxes, and other delinquencies in respect with the terms and provisions of the notes and mortgages justified foreclosure irrespective of whether the 1937 taxes were delinquent in the sense that HOLC would have a cause of action for foreclosure for their nonpayment. In addition to this, borrowers have not offered to pay these delinquent taxes and have not pointed out wherein they were prejudiced by the payment of the taxes before the expiration of the time extended for the payment thereof.

Contentions one, two, and three will be discussed together. Mortgagors admit their delinquencies, but contend that the law as applied and enforced by courts of equity will sometimes justify refusing relief to a lender who is shown to be guilty of conduct inequitable in its nature. We admit the correctness of this contention as an abstract principle of law relating to equity and equity jurisprudence, but the authorities cited by mortgagors do not sustain their contention when judged by the facts in the case before us. We are convinced that the federal government had certain liberal and beneficent purpose in mind in the creation of HOLC, and it is apparent from the provisions of the act granting a three-year moratorium at the very inception of each loan that the Congress intended that some liberality in the extension of time for payments of the respective loans be granted. It is also apparent that HOLC was vested with discretion to grant additional extensions of time within its discretion. We do not think, however, this should be so construed as to deny HOLC the right to include in its loan contracts suitable provisions to protect its interests. The inclusion of the provision that "time is of the essence" of the contract is a thing not contrary to the spirit of the act of Congress. If we adopted the contention made by the mortgagors and refused HOLC relief herein, we would be establishing a principle that the courts are vested with full authority to inquire into and interfere with the discretion of the HOLC in every instance, and this is a power which we do not think the courts possess. We do not for a moment doubt the evidence of the mortgagors with respect to the distressed circumstances, but at the same time we would be unwilling to undertake to exercise the power which mortgagors insist we have, and which we insist we do not have, to sit in place of HOLC and say when it should and should not grant further extensions of time.

There seems to be but one other decision upon an issue similar to this, and that is cited to us in the case of HOLC v. Wilkes, 130 Fla. 492, 178 So. 161. That court said:

"We find nothing in the terms of the act providing for a moratorium on the foreclosure of home mortgages nor is the court authorized to grant indulgences on the foreclosure of such mortgages or determine whether the condition of the home owner or the circumstances of the security would warrant an extension. All such powers are vested solely and exclusively in the Home Owners' Loan Corporation. . . . The Home Owners' Loan Act is clear and unambiguous. Insofar as the corporation is authorized to borrow, loan and collect money, it stands on like footing as any other person or corporation. . . . It was not designed to grant a moratorium on home mortgages or to provide a means of escape from paying them."

And we agree with the foregoing statement.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and GIBSON, JJ., absent.