62 So.2d 702 (1952)
RIVER HOLDING CO.
v.
NICKEL et ux.
Supreme Court of Florida, Special Division B.
December 16, 1952.
Rehearing Denied January 8, 1953.
Clyde A. Epperson, Miami, for appellant.
O.B. White and E.S. Corlett, III, Miami, for appellees.
DREW, Justice.
This is an appeal from a final decree foreclosing a second mortgage on land in Dade County. The appellant here, River Holding Company, was the defendant below.
The note secured by the mortgage foreclosed was for the sum of $25,000, was dated December 18, 1950, was payable in monthly installments of $200, plus 5% interest beginning January 15, 1951. Principal and interest were payable at Little River *703 Bank & Trust Company, 8017 N.E. 2nd Avenue, Miami, Florida. The original mortgage and note were executed by Thomas J. Woolley and his wife, Inez Woolley, and contained a thirty day grace clause.
On December 31, 1951, appellant River Holding Company consummated the purchase of the real property encumbered by the foregoing mortgage and as a part of the transaction assumed a first mortgage and the balance due on the subject mortgage. At the time the transaction was closed the $200 payment which became due December 15, 1951, had not been paid and such amount was included in the balance which was assumed by the appellant.
The appellant's president testified that he was under the impression  as was his lawyer  that no further payment was due on the second mortgage until January 15th and that such impression was partially gained by the fact that when he inquired of the bank where the note was payable and where it was kept until withdrawn by appellees January 22nd he was told there was a balance due of $22,800 but no mention was made of the fact that there were any past due payments. Parenthetically, it should be noted here that the figure given appellant of $22,800 indicated clearly that only eleven payments had been made and that one was overdue.
While there are conflicts in the evidence as to just exactly what did happen after the transaction was closed and appellant acquired title, it is clear that both the appellees and appellant were somewhat confused by the change of ownership in the land. Mr. Woolley, the original mortgagor, appellant's vendor, had been making payments to the bank but had moved and changed his address and testified that he did not receive the monthly notice and did not have it when the appellant's president made inquiry concerning the exact amount of the January 15th payment and that there were visits to the bank to find out. There is no doubt that the appellant did go to the bank shortly after January 22nd to pay the note and was told by the bank officials that it had been withdrawn.
Upon learning that the note was withdrawn there is testimony that the appellant's president learned that appellees were living in West Palm Beach and, while there is some conflict as to the exact hour that the tender took place, there is no question that the appellant's president went to West Palm Beach with Mr. Woolley, his vendor, and while there actually tendered payment of all sums due prior to the time the suit to foreclose was actually commenced or the appellant had actual notice that appellees had exercised their option to declare the entire amount due. Appellant's president and Mr. Woolley, who accompanied him on the trip to West Palm Beach, both testified to the tender and the appellee husband, in testifying on the same matter said:
"Q. Did not Mr. Dunham at that time offer you $1000 to pay and defaults that may have been in existence, and let the balance go to the credit of the note?
"A. That's right. You mean the $1000? No. He wanted to pay off the note and bring everything up-to-date; so I said to Mr. Dunham and Mr. Woolley  they were both in my store  so I told them both to get in touch with my attorney Mr. Corlett; and I told him also they foreclosed, and if they wanted to pay all expenses, and settle this  that is, at least I knew about it."
A court of equity is a forum for the administration of justice. The record in this case is abundantly clear that appellants spent about two or three weeks trying to learn the amount due on the obligation and to pay it and there is no contention whatever that it was financially unable to do so. In fact, it appears conclusively here that appellant had paid into the registry of the lower court monthly since this suit was instituted more than enough to cover each payment and that there is now in the court's registry the sum of $3,586.20 for that purpose.
While there is much in appellant's case to appeal to a court of conscience on general principles, we have held in previous cases of this kind that when a holder *704 of a note secured by a mortgage decides to exercise his option to declare all remaining payments due and payable, such decision must be brought home to the defendant in some effective manner before payment is tendered, otherwise the option is defeated. Clay v. Girdner, 103 Fla. 135, 138 So. 490. See also Fegers v. Pompano Farms, Inc., 104 Fla. 123, 139 So. 201.
The rule which we have adopted on this question is in accord with the prevailing rule as announced in 36 Am.Jur. 887, 888, paragraph 400, as follows:
"Although there is authority to the contrary, the prevailing rule is to the effect that a tender of arrears due on a mortgage containing an acceleration clause, made before the holder of the mortgage has exercised his option to declare the entire amount of the debt due, prevents the exercise of such option. This is true whether the default was in relation to principal, interest, or taxes. The basis of this rule is said to be that after a tender there is no longer any default which is the foundation of the right to exercise the option. The rule does not, however, apply to a partial or conditional tender. The question here involved is distinct from that involved in the effect of a tender of the mortgage debt after maturity upon the lien of the mortgage."
For a further exhaustive treatment of the same subject see Annotation in Volume 41 A.L.R. beginning on page 732.
In view of the sincere, honest and diligent efforts of appellant to pay his obligation as it matured  a quality much to be commended  even to the extent of driving some seventy-five miles to do so when the note he assumed called for payment at a local bank, and the many prior decisions of this Court holding that in order to accelerate the due date of a note such decision of the owner thereof must be disclosed to the payor in some effective manner before payment is tendered, we must reverse the decree of the lower court.
The decree of the lower court is reversed with directions to dismiss the bill of complaint. Costs shall be assessed against appellees.
TERRELL, Acting C.J., and HOBSON, and MATHEWS, JJ., concur.