318 So.2d 203 (1975)
FEDERAL HOME LOAN MORTGAGE CORPORATION, Appellant,
v.
George B. TAYLOR and Wife, Jo Ann Taylor, Appellees.
No. X-177.
District Court of Appeal of Florida, First District.
August 6, 1975.
Rehearing Denied September 5, 1975.
*205 James E. Moore, and Harold F. Peck, Jr., Moore & Anchors, Niceville, for appellant.
C. Thomas Holland, Crestview, for appellees.
WILLIS, BEN, C., Associate Judge.
The appellant was plaintiff in the trial court in a suit to foreclose a real estate mortgage given by appellees to secure an installment promissory note by them. Appellant is the owner and holder of the note and mortgage. The parties will be referred to as the mortgagors and mortgagee.
The pleadings and other preliminaries to the entry of the Final Judgment are somewhat unique and will be mentioned further. In the Final Judgment, dated October 8, 1974, the trial judge declined the foreclosure of the mortgage, reciting: "... it being the opinion of the Court that it would not be equitable to allow foreclosure of said property because this action is the result of both parties' conduct". However, the judgment did require the defendant mortgagors within 15 days to pay certain court costs; to pay certain sums to the mortgagee to cover installments and late charges accruing through October, 1974; and to pay a $450.00 fee to the attorney ad litem. It was found that $1,650.00 is a reasonable fee for plaintiff's attorneys and ordered the plaintiff mortgagee to pay it, and also declared that certain "personal costs" incurred by the mortgagee for attending the final hearing "shall be their own responsibility to pay". In the final paragraph of the judgment it is provided that if the mortgagors comply with the payments required of them, as above mentioned, the note and mortgage shall be reinstated "and that the obligations and duties provided in the original note and mortgage will proceed under the original terms and conditions".
The mortgagee raises two points on appeal, namely (1) that the trial court abused its discretion in denying the right to foreclose, and (2) the court erred in failing to assess attorneys fees against the mortgagors when the instruments provide for such collection.
The note involved is a conventional FHA form monthly installment instrument in the principal amount of $13,600.00 with 8 1/2% interest on the unpaid balance payable in monthly installments of $104.58 each commencing September 1, 1970 and falling due on the first day of each succeeding month. It has an acceleration clause to the effect that if default be made in the payment of any installment and "such installment is not made good prior to the due date of the next installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note". It also provides that in the event of default in the payment of this note, "and the same is collected by an attorney at law, the  [makers]  hereby agree to pay all costs of collection, including a reasonable attorney's fee".
The mortgage is in an FHA form containing the usual covenants including those of payment of the note installments and all taxes and assessments on the property, and ... "all and singular the costs, charges and expenses, including reasonable lawyer's fees ... incurred or paid by the mortgagee because of the failure on the part of the mortgagor promptly and fully to perform the agreements and covenants *206 of said promissory note and this mortgage, and said costs, charges and expenses shall be immediately due and payable and shall be secured by the lien of this mortgage".
The mortgage also provides:
"Any deficiency in the amount of such monthly payment shall, unless made good by the mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage. The mortgagee may collect a late charge not to exceed two cents (2¢) for each dollar ($1) of each payment more than fifteen (15) days in arrears to cover the extra expense involved in handling delinquent payments."
The net effect of the payment provisions is that the monthly installment is due on the first day of the month, but there is a grace period of fifteen days within which it may be paid without further obligation. If not paid within this period a "late charge" may be assessed, and further, if such payment is not "made good" prior to the first of the next month, the mortgagee has the option to declare the entire unpaid principal and accrued interest due and payable "at once" without notice.
The facts involved are not in serious dispute. The mortgagor, George B. Taylor, was during the events involved a noncommissioned officer in the U.S. Air Force and from about September 1972 until sometime shortly prior to the final hearing on October 8, 1974 was on active duty as a member of an Aerospace Rescue and Recovery Squadron at Clark Air Base in the Phillipine Islands. His family, including his wife, the defendant Jo Ann Taylor, was with him in the Phillipines. Apparently until April 1973 the monthly payments were seasonably made and received within the month. The May 1973 payment was a month and twenty days late but was accepted by the mortgagee. The next payment was on September 10, 1973 when payments of three installments were made. These were accepted and applied to the installments due on the first of June, July and August. Mail deliveries to and from the Phillipines and the U.S. mainland require seven to eighteen days.
On September 29, 1973 the mortgagors mailed two money orders aggregating $121.38, which was the proper sum for the monthly payment due September 1, 1973. The payment includes the $104.58 installment as specified in the note, also escrow funds of $14.42 for accruing taxes and insurance as provided in the mortgage, and a late charge of $2.38. This payment was returned with a covering form letter dated October 4, 1973 stating the remittance is not sufficient to reinstate the delinquent account and that the sum of $240.38 is required "to eliminate the delinquency, which includes the regular installment due the first day of this month and late charge". Thereafter the mortgagor mailed payments which would have been sufficient to pay the accruals within the month but when received in the succeeding month another installment would have fallen due on the first. In each instance the mortgagee would mail it back because of the lack of the current installment. This continued each month until March 1974 with remittances and returns often crossing in the mail. In April 1974 and thereafter mortgagors discontinued payments as it was likely they would be returned or even misplaced in the mail. However, they set aside monies in an escrow account to be available for payments on the debt.
The Complaint seeking foreclosure, filed April 6, 1974, alleged default by failing to pay payments due September 1, 1973 and all subsequent payments. Pursuant to motion by plaintiff, an attorney ad litem was appointed for defendant mortgagors pursuant to the Soldiers' and Sailors' Civil Relief Act (50 U.S.C.App. Sec. 520), as defendant, George B. Taylor, was on active duty in the military services. Constructive service of process on defendants was apparently perfected. However, the attorney *207 ad litem filed a motion to stay proceedings under 50 U.S.C.App. 521 until the serviceman should be able to return. An order staying proceedings for 30 days was entered June 10, 1974. Ultimately the final hearing was conducted in two parts with the plaintiff's evidence being received on August 29, 1974 in the absence of defendant but with the attorney ad litem present and participating and on October 8, 1974 the testimony of mortgagor George Taylor was taken, final arguments heard, and the court's ruling announced. It does not appear that any formal Answer was filed, but in the attorney ad litem's affidavit and motion for stay of proceedings it was set forth that defendants had made every good faith effort to pay plaintiff the sums due and they had all been returned. There were other statements of confusion in communications at such distance and a change in amount of monthly payments due to loss of homestead status of the property involved.
It is apparent that the cause was heard primarily on the issue of whether or not the acceleration of the due date of future mortgage installments with resultant foreclosure would be unconscionable and an inequitable result. Just prior to final arguments by counsel, the mortgagee's counsel asked to submit an affidavit for reasonable attorney fees. The Court did not respond directly and after the arguments on the merits the court inquired of the attorney ad litem if he had any comments to make concerning the attorney's fees. Counsel stated he hadn't had time to read the affidavit and inquired how much was being asked. The court replied that it was $1,650.00 based on a minimum of 23 hours. Counsel responded only to say "well ..." when the court interrupted to say, "[a]fter you hear the Court's order, if you feel like you need to have a hearing on it, we'll set the matter". Since the court did not assess an attorney's fee for the mortgagee against mortgagors, counsel for the mortgagors, of course, did not further pursue the matter.
The mortgagor, George Taylor, testified that the reason for the late payment in September was the necessity of having his daughter flown back to the mainland to a hospital in Texas. He further testified that in October and November he was still having financial problems as he had to pay rent for his wife in Texas, presumably in connection with the child's hospitalization, also pay for his living quarters in the Phillipines, and pay the installment on the mortgage in Florida.
The mortgagee contends that the trial court abused its discretion in refusing to honor acceleration of the due date of the debt and accord a foreclosure for the full amount of the unpaid principal and accrued interest. It is fully established in the jurisprudence of this state that an acceleration clause or promise in an installment note or mortgage confers a contract right upon the note or mortgage holder which he may elect to invoke upon default and to seek enforcement. Treb Trading Co. v. Green, 102 Fla. 238, 135 So. 510 (1931); Campbell v. Werner, Fla.App.3rd 1970, 232 So.2d 252. It is essential that valid contracts be safeguarded and the right of enforcement in the event of breach be accorded. A mere offer or willingness of a mortgagor to cure a default, after a valid election to accelerate, is not deemed a sufficient ground to deny acceleration and foreclosure. Campbell v. Werner, supra. Furthermore, mere notions or concepts of natural justice of a chancellor which are not in accord with establishment equitable rules and maxims may not be applied in rendering judgment. The obligation of a mortgagor to pay and the right of a mortgagee to foreclosure in accordance with the terms of the note and mortgage are absolute and are not contingent on the mortgagor's health, good fortune, ill fortune, or other personal circumstances affecting his ability to pay. Home Owners' Loan Corp. v. Wilkes, 130 Fla. 492, 178 So. 161.
*208 However, it is equally well established in our law that a court of equity may refuse to foreclose a mortgage when an acceleration of the due date of the debt would be an inequitable or unjust result and the circumstances would render the acceleration unconscionable. Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751; Lieberbaum v. Surfcomber Hotel Corp. (Fla.App.3rd 1960), 122 So.2d 28; Althouse v. Kenney (Fla.App.2nd 1966), 182 So.2d 270.
In the case sub judice the mortgagor had not prior to the return of his tendered payment received by the mortgagee subsequent to October 1, 1973, been aware of any purpose or inclination of the mortgagee to be uneasy about this account. After nearly three years of regular payments, there was one lapse of a month plus 20 days in making a payment followed by a three month lapse but immediately afterwards there were paid three installments with late charges. The September 10, 1973 payment did not include the installment which fell due September 1. However, prior to October 4 this installment was paid, but mortgagee refused to accept it because the October 1 installment was not included. The lag in mail deliveries was obviously a circumstance which contributed to much of the lack of communication and misunderstanding. It is to be noticed here that the mortgagors were not in the Phillipines by mere choice but due to a military assignment. Though the personal hardship arising from the daughter's need of stateside hospitalization is not a circumstance to excuse payment of a debt when due, the distance between the mortgagors and mortgagee's agent because of military obligations of the mortgagor is not to be ignored as a factor impairing the ability of the parties to communicate demands and responses thereto. The total evidence indicates a good faith effort on the part of mortgagors to meet the mortgagee's conditions of bringing the account current. Perhaps the mortgagee would have been less adamant in returning tendered payments were it not for the fear that continued acceptance may have worked a waiver or estoppel to assert an accelerated default. Cited in support of such a concept is Criado v. Milgram, Fla.App.3rd 1970, 237 So.2d 596. This case is not in point as there the estoppel, arose when the assignee of the mortgage knew that the mortgagors had continued to make payments to the assignor after the assignment, and thus assignee was estopped to assert that mortgagor was in default for not making payments to him. Here, the trial judge was well within his discretion in concluding that it would be unconscionable to precipitate the maturity of the entire balance of over $14,000 which could only result in the loss of the mortgaged property through foreclosure, all because of a technical default of one month's installment which well could arise from excusable misunderstanding and lack of effective and timely communication. We find no error in that portion of the judgment declining foreclosure and effecting reinstatement of the note and mortgage.
The second point urged by appellant that the court erred in failing to assess attorney's fees against the mortgagor in this case is based upon Schechtman v. Grobbel, Fla.App.2nd 1969, 226 So.2d 1, and Rockwood v. DeRosa, Fla.App.4th 1973, 279 So.2d 54. In Schechtman there was upheld a refusal to foreclose a mortgage because of a technical breach of an obligation to pay escrow tax monies to the mortgagees when such payments were made into a special tax account which mortgagors opened in a bank. However, it was held the court was in error in considering a prayer for attorney's fees as moot, and that a mortgage covenant to pay all reasonable lawyers fees incurred or paid by mortgagee because of failure of mortgagor to duly, promptly and fully perform and abide by all agreements, conditions and covenants of the mortgage required the court to take testimony to ascertain an amount for reasonable *209 attorney fees payable to the mortgagee. It was said:
"After all, appellees were the parties in default and the evidence reflects no evidence of any wrongdoing on the part of appellants. Appellants may have sought an inequitable or unconscionable remedy, but their right to proper redress should not be denied."
The Rockwood case merely follows Schechtman in holding attorney fees, when contracted for, should be assessed when the mortgagor is in technical default, even though acceleration and foreclosure are denied.
The Final Judgment recites at the outset a finding that "this action is the result of both parties' conduct". It does provide for the recovery by mortgagee of the court costs and requires the mortgagors to pay a fee for the services of the attorney ad litem. Though the mortgagee did not obtain all it sought, it suffered no monetary loss other than its expenses in attending the hearing and such attorney fees as were incurred. As the court found, and the evidence shows, more provident conduct on the part of each side would have made the action unnecessary. The mortgagors might have sent an extra months payment to be sure of meeting the requirements of reinstatement. The mortgagee might well have been less inflexible and adamant in pursuing its strict policy in view of the serviceman's station on the other side of the world. Symbolically, the mortgagee resorted to a bulldozer when a garden spade might well have sufficed.
We deem the case sub judice may be distinguished from Schechtman, supra, in that here there is some conduct on the part of the mortgagee which precipitated this action when it might have been resolved by doing equity and certainly short of the methods it chose to pursue. In view of these circumstances we do not find an abuse of discretion on the part of the trial court in declining to assess attorney fees incurred by the mortgagee in this foreclosure action against the mortgagors.
The appellant has filed in this court a petition for an award of attorney's fees. The same is denied on the authority of Ohio Realty Inv. Corp. v. Southern Bank of West Palm Beach, Fla.Sup.Ct. 1974, 300 So.2d 679, which holds that a mortgagee is not entitled to an award of attorneys fees on appeal in foreclosure action absent a clear indication in the instruments involved that the parties intended mortgage and promissory note provisions as to attorneys fees to include such fees on appeal. We deem the cited case to be controlling here.
Affirmed.
McCORD, Acting C.J., and MILLS, J., concur.