ERVIN, Judge,
dissenting.
I respectfully, but emphatically, dissent. As an appellate judge, I am reluctant to set aside the trier of facts’ exercise of discretion, yet when that discretion is exercised without properly taking into account well established equitable precepts, in my judgment such discretion has been abused. There were a number of equitable considerations which the lower court apparently did not entertain in reaching its result. Had the record disclosed the existence of only one of them, I might concur with the ma *1279 jority; however the cumulative effect of them all convinces me that foreclosure should not have been ordered.
Similar to the facts before the court in Northside Bank of Miami v. La Melle, 380 So.2d 1322 (Fla. 3d DCA 1980), we find from the record here that the mortgagee had a long history of accepting late monthly payments on the mortgage. Given such circumstances, a court of equity may refuse to foreclose a mortgage. La Melle. Indeed, the loan history of the Browns, the former predecessors in title, for the years 1979 and 1980 reveals a consistent pattern of both missed and long overdue payments, resulting in the assessment of numerous late charges. The Association’s acquiescence in accepting late payments continued until May 27, 1980, when the Association advised the Browns that because the payments for the months of April and May had not yet been forwarded, it considered the loan in default and notified them that the maturity debt was accelerated. Nevertheless, the Association later permitted the Browns to reinstate their loan upon the payment of the two monthly installments, together with late charges.
Another well recognized equitable consideration is that a lender has the right to accelerate the mortgage when the violation of the acceleration provision goes to the impairment of the lender’s security. First Federal Savings & Loan Association of Englewood v. Lockwood, 385 So.2d 156 (Fla. 2d DCA 1980); Woodcrest Apartments, Ltd. v. Ipa Realty, 397 So.2d 364 (Fla. 1st DCA 1981). This is because the only interest the mortgagee retains in the secured property is a lien. Shavers v. Duval County, 73 So.2d 684 (Fla.1954). Consequently, the mortgagee would ordinarily have no right to restrict the mortgagor’s transfer of the mortgage to another by insisting on an acceleration of the note and mortgage caused by the transfer, unless it could show that the transaction resulted in an impairment of the security.[1] See Consolidated Capital Properties, II, Ltd. v. National Bank of North America, 420 So.2d 618 (Fla. 5th DCA 1982) (breach of acceleration clause prohibiting conveyance of secured property to another by the mortgagor gives no right to the mortgagee to accelerate, in the absence of a demonstration of an impairment of the lender’s security). One means of ascertaining whether the lender’s security is impaired is to establish first the value of the security, and then the balance remaining on the note and mortgage. Thus, if the security far exceeds that of the balance due, this may be a proper factor in determining whether the mortgagee should be permitted to accelerate. See Overholser v. Theroux, 149 So.2d 582, 584 (Fla. 3d DCA 1963). In the present case, we find that the property secured by the mortgage had been sold for the total sum of $71,662 on November 3, 1980, and the balance remaining due on the loan as of the date the Association exercised its option to accelerate, November 28, 1980, was $31,362.29, including accrued unpaid interest and late charges. Consequently, the lower court could reasonably have concluded that the value of the security far exceeded the balance due on the note and mortgage, and that there was no realistic impairment to the lender’s security.
Since the primary reason for permitting a mortgagee to accelerate a note is to protect *1280 its security, see First Federal Savings & Loan Ass’n v. Lockwood, a mortgagee, whose conduct is so inconsistent as to indicate a lack of a genuine concern that its security is impaired by a default, may be precluded from exercising its right to accelerate. Such conduct may occur in instances where the mortgagee accepts substantially all amounts due under the mortgage, even after it has elected to accelerate. Ameri-first Federal Savings & Loan Association of Miami v. Century 21 Commodore Plaza, Inc., 416 So.2d 45 (Fla. 3d DCA 1982). Although the mortgagee below did not accept from appellants past due amounts under the note and mortgage, it did act inconsistently with its right to accelerate by advising the Davids, after it had exercised its option, that it would, among other things, reinstate the loan at 12.5% interest, together with the payment of all past due installments and late charges. The mortgage, which the Davids assumed, secured a note bearing a 7.5% interest rate. One could well wonder, then, whether the Association’s decision to accelerate was motivated more by a desire to discontinue carrying a mortgage at an interest rate far less than that currently prevailing, than it was by any genuine concern that the default caused its security to be impaired.
Because of the requirement that the lender demonstrate that its security is impaired by the default, courts of equity will frequently examine the circumstances giving rise to the default. In Federal Home Loan Mortgage Corporation v. Taylor, 318 So.2d 203 (Fla. 1st DCA 1975), the mortgagor missed three monthly payments, apparently because his financial resources had been depleted due to his daughter’s hospitalization. However, in September, 1973, he attempted to bring them up, by making three installment payments on the delinquencies. The mortgagee accepted them and applied them to the installments due on June, July and August, thereby placing the September payment in default. Each month thereafter when the mortgagor made one monthly payment, the sums were returned by the mortgagee with the statement that the remittance was not sufficient to reinstate the delinquent account. Finally, after several months, the lender sought to foreclose. The court disallowed the mortgagee’s right to accelerate, stating that the total evidence indicated a good faith effort on the part of the mortgagor to meet the mortgagee’s conditions for bringing the account current. Id. at 208.
I firmly believe the same rule should apply here. Although the Browns had failed to make the payment due on October 1, 1980, the Davids’ closing agent, Title Searchers, had advised an employee of the Association, on October 31, 1980, that the closing would occur on November 3, 1980, and that the October and November payments would then be deducted from the amount paid, and that the two monthly installments would then be conveyed to the Association. The two installment payments were in fact deducted, but, through no fault of the Davids, were not forwarded. The Davids did all they could, in relying upon the provisions of the closing statement, to meet their obligations. Believing that the October and November payments had been made, they went to the Association on December 1,1980, to make the December, 1980 payment, and only then did they discover that the loan was in default. As in Federal Home Mortgage Corporation, the evidence before us reveals a similar good faith effort on behalf of the mortgagors to meet the mortgagee’s conditions for bringing the account current.
There is perhaps an equally plausible reason why it would be inequitable to permit the Association to accelerate the note and mortgage. It is well established that a decision of the holder of a note secured by a mortgage to exercise an option to declare all remaining payments due and payable must be brought home to the mortgagor in some effective manner in order for the option to be operative.[2] River Holding Co. v. *1281 Nickel, 62 So.2d 702 (Fla.1952). At the time it exercised its option, the Association knew or should have known that the mortgage had been assumed by the Davids, yet it failed to notify them of the default. No less than two contacts had been made by the closing agent with one or more employees of the Association. On the first occasion, Title Searchers obtained an assumption package containing information regarding the status of the loan and transfer papers. Later, on October 31, 1980, Title Searchers again contacted the Association, advising that the closing would occur on November 3, 1980, and then verified the loan balance, the exact amounts of the October and November, 1980 mortgage payments, and assumption procedures. The closing in fact occurred on November 3, 1980, and a deed was recorded on November 4, 1980, so that the Association was at the minimum placed on constructive notice that the property had been conveyed and assumed by the new mortgagors.
Although I agree that the Association should not be forced to conduct a search of the public records as a precondition to its right to accelerate, I believe, if the Association was unable to determine from its own files whether the mortgage had in fact been assumed, it would have been a simple enough task for one of its employees, given the information it possessed, to have placed a call to Title Searchers to determine the mortgage’s current status. In balancing the respective rights of the Davids and the Association, I consider that to require the Association to follow-up the information it possessed by simply calling the closing agent is a burden far less onerous than that now imposed upon the Davids — the responsibility of paying off the accelerated note, or the alternative of facing the loss of their home.
It is well established in our law that a court of equity may and should refuse to foreclose a mortgage when an acceleration of the due date of the debt would be inequitable or work an unjust result. Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929); Lieberbaum v. Surfcomber Hotel Corp., 122 So.2d 28 (Fla. 3d DCA 1960). The present case represents just such a situation. I would therefore reverse.

. Of course, if the mortgage contained a due-on-sale clause, which the mortgage below does not, there would be no requirement that a federal savings and loan association demonstrate that its interest in the security was impaired because regulations of the Federal Home Loan Bank Board preempt conflicting state limitations on the due-on-sale practices of federal savings and loan associations. Fidelity Federal Savings and Loan Association, et al. v. DeLa-Cuesta,-U.S. -, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).
The parties may also unambiguously agree to certain terms in the mortgage, the breach of which would authorize the mortgagee to accelerate, despite the absence of any showing that the security was affected by the breach. For example, in O’Connell v. Dockendorff, 415 So.2d 35 (Fla. 2d DCA 1982), the mortgage contained a clause providing that if the mortgagors assigned the mortgage to another, the rate of interest would be adjusted upward to conform with that currently prevailing. The opinion held, under such circumstances, acceleration was not inappropriate. The mortgage on review does not, however, have a similar provision.

. A caveat to this rule is that notice of the election is not required in the absence of a specific provision therefor in the mortgage. Graham v. Fitts, 53 Fla. 1046, 43 So. 512 (1907). The mortgage on review is silent in this regard; nevertheless the Association un *1281 dertook to notify the persons who, on their records, were the mortgagors, the Browns. It would seem to me, that since equitable principles control a mortgagee’s right to accelerate, if a mortgagee assumes a duty, which it would not otherwise be required to assume, it should then be required to carry out its performance in a non-negligent manner.