643 So.2d 30 (1994)
Amos FOWLER & Amylene, Inc., Appellants,
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF DEFUNIAK SPRINGS now known as First Federal Savings Bank of Defuniak Springs, Appellees.
No. 93-523.
District Court of Appeal of Florida, First District.
September 14, 1994.
Rehearing Denied October 31, 1994.
*31 Bret A. Moore, James E. Moore, Bret Moore, and Alice H. Murray of Moore, Kessler & Moore, Niceville, for appellants.
George Ralph Miller, Defuniak Springs, for appellees.
PER CURIAM.
Amylene, Incorporated and Amos Fowler, president of Amylene, (together "appellants"), appeal a final judgment of foreclosure entered in favor of First Federal Savings Bank of Defuniak Springs ("First Federal").[1] Appellants raise five issues on appeal: (1) whether the trial court abused its discretion in finding First Federal had properly accelerated the debt under the note and mortgage; (2) whether there is competent, substantial evidence to support the trial court's finding that no trust relationship existed between appellants and First Federal; (3) whether the trial court erred in its calculation and award of late charges and interest owing on the unpaid principal; (4) whether the trial court abused its discretion in appointing a receiver; and (5) whether the trial court erred in its award of attorney fees. We reverse on the third and fifth issues, and affirm, without discussion, all remaining issues.
The facts out of which this case arises are as follows. On December 12, 1977, appellants executed a promissory note and mortgage to First Federal in the amount of $275,000 at 10% interest to refinance a mortgage held on a sixty-five unit motel complex. The monthly mortgage payments were $2,995.20, due on the twentieth day of each month. There was a fifteen-day grace period and a 5% late charge penalty for monthly installments fifteen days past due. In 1979, First *32 Federal approved Fowler's request to convert the motel into a condominium project, and Fowler and his agents began to sell individual units subject to the mortgage held by First Federal.
Appellants ceased making monthly mortgage payments to First Federal, beginning with the payment due on January 20, 1985. First Federal accelerated the loan after providing the pre-acceleration notice required under paragraph 18 of the mortgage.[2] Suit for foreclosure was filed shortly thereafter, and a receiver was appointed by the trial court on July 14, 1985, at the request of First Federal.
A one-day trial was held on July 22, 1992. First Federal presented, inter alia, the testimony of Perin Bush, a bank employee who was responsible for calculating the amount of interest accruing on the unpaid principal. Bush testified she used the interest rate on the parties' note (i.e., 10%), and entered it into the computer to calculate the interest accruing on the unpaid principal from December 1984 to the date of trial.[3] The computer calculated a rate of $84.74 per day or $232,032.20 due in interest. She did not know whether the computer used simple interest or compound interest in arriving at this amount. She testified that the interest amount included interest on a $4,000 appraisal fee, a $10,000 attorney fee advance, court expenses, insurance on the property, and other expenses incurred over the last seven and a half years in accordance with the mortgage provisions which permit their inclusion. She further testified that the interest calculation on these expenses did not begin until the day she actually disbursed them.
The trial court entered final judgment of foreclosure in favor of First Federal, finding the bank properly accelerated the mortgage. The court further found that appellants owed First Federal a total sum of $606,449.51, which figure included interest, late charges, costs and attorney fees.[4] As of the date of oral argument, the property had not been sold pursuant to the final judgment.
Appellants claim the trial court erred in awarding interest on approximately $72,406.56 of other expenses, in addition to the unpaid principal. Nevertheless, paragraph 7 of the mortgage provides for interest to accrue on expenses the bank incurs to protect its property interest when the borrower fails to perform the covenants and agreements contained in the mortgage.[5] Under the plain terms of the contract, then, the addition of *33 the above expenses, along with interest accruing thereon, is properly included as part of the indebtedness due under the mortgage.
However, appellants correctly argue error in the bank's manner of calculating the appropriate per diem interest charge. First Federal based its interest calculation using 360 days per year as opposed to 365 days per year. At oral argument, First Federal conceded there was no authority in the mortgage documents to support the calculation of interest based on 360 days as opposed to 365 days. Moreover, Ms. Bush could not state whether the interest was calculated using simple or compound interest. Therefore, we reverse the award of interest and remand with directions that interest be computed based on 365 days per year and on a simple interest rate.
Appellants next claim error in the award of $17,104.14 in late charges. The promissory note provides for a late charge of 5% of any monthly installment not received by the bank within fifteen days after the installment is due. Appellants claim that once the bank opted to declare the entire amount due, the late charges should not have continued to accrue on the delinquent monthly payments. We agree. The bank is only entitled to late charges that accrued up until the day the note was accelerated. Thus, we vacate the award of late charges and remand for an evidentiary hearing to determine the correct amount of late charges owed.
We also find error in the award of $50,000 in attorney fees. An award of attorney fees requires competent, substantial evidence of both the services performed by the attorney and the reasonable value of those services. In re Estate of Lopez, 410 So.2d 618 (Fla. 4th DCA 1982). In this case, First Federal's counsel submitted an affidavit enumerating all the tasks performed by counsel in prosecuting this case over a five and a half year period and listing a sum total of "500+ hours" spent. A supporting affidavit recommended an attorney's fee of $50,000. A hearing was held on the attorney fees issue; appellants admit both affiants testified consistent with their affidavits.
While the award of attorney fees may very well have been based on competent, substantial evidence, the lack of a transcript and the absence of any specific findings in the final judgment supporting the award, compels reversal. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). Therefore, on remand, the trial judge should make the required findings, or in the alternative, hold an evidentiary hearing.
Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for consistent proceedings on the issues of interest, late charges and attorney fees.
LAWRENCE, J., and SMITH, Senior Judge, concur.
BENTON, J., concurs with written opinion in which SMITH, Senior Judge concurs.
BENTON, Judge, concurring.
Today we affirm the trial court's judgment insofar as it accelerates appellants' indebtedness and forecloses the mortgage securing the debt. I write separately to address appellants' argument that they did not receive adequate notice of the lender's intention to accelerate the obligation. As the first point in their brief, appellants argue that the trial court erred in holding that First Federal had properly accelerated the debt under the terms of the mortgage. As a prerequisite to acceleration, the mortgage required notice of any breach specifying, at least thirty days in advance, the action required to cure the breach.
The parties agree that such notice was given, in the form of a letter dated May 13, 1985, advising of missed payments and stating:
Unless we have received the amount of [$]15,514.78 on or before June 13, 1985 together with our attorney's fee in the amount of $150.00, acceleration of the total indebtedness will become due and foreclosure proceedings will commence... .
In response to requests for admission, the lender conceded that it had received timely payment, and one of its officers testified to the authenticity of a receipt evidencing the payment.
*34 Appellants argue with considerable force that their tender precluded acceleration at that time, under the terms of the mortgage. See generally River Holding Co. v. Nickel, 62 So.2d 702, 704 (Fla. 1952); La Boutique of Beauty Academy v. Meloy, 436 So.2d 396, 398 (Fla. 2d DCA 1983); Amerifirst Federal Sav. & Loan Ass'n of Miami, 416 So.2d 45 (Fla. 3d DCA 1982). No reason of record justifies the lender's return of the cashier's check it received on June 13, 1985.
But the mortgage was still in default when the lender filed for foreclosure, and a complaint for foreclosure can operate as notice of an election or intention to accelerate. Locke v. State Farm Fire & Casualty Co., 509 So.2d 1375 (Fla. 1st DCA 1987).
The filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable. Prince v. Mahin, (1917) 73 Fla. 525, 74 So. 696; Gus' Baths v. Lightbown, (1931), 101 Fla. 1205, 1211, 133 So. 85, 135 So. 300; Liles v. Savage, (1935) 121 Fla. 83, 163 So. 399. And the filing of suit to foreclose operates as notice to the mortgagor of the election to accelerate, where the election to do so is declared in the complaint ... or, in the absence of such declaration, where the complaint on its face shows that foreclosure for the entire mortgage indebtedness is sought therein. Liles v. Savage, supra.
Campbell v. Werner, 232 So.2d 252, 254 n. 1 (Fla. 3d DCA 1970). In general, "a willingness of a mortgagor to cure a default, after notice that the mortgagee has exercised his election to declare the entire indebtedness due for such default, is not a ... ground for denying acceleration and foreclosure." Campbell v. Werner, 232 So.2d 252, 257 (Fla. 3d DCA 1970).
Here, in light of the thirty-day notice requirement in paragraph 18 of the mortgage, the foreclosure complaint should be viewed, not as an election to accelerate, but as the notice prerequisite to an election to accelerate. Viewing the complaint in this light, a tender of the arrearage by deposit with the clerk of the court within thirty days of the filing of the complaint might have precluded acceleration and foreclosure; but we need not decide the question, since there was never any such tender.
Despite appellants' initial tender, as time passed this ceased to be a case where the "total evidence indicates a good faith effort on the part of the mortgagors to meet the mortgagee's conditions of bringing the account current." Federal Home Loan Mortgage Corp. v. Taylor, 318 So.2d 203, 208 (Fla. 1st DCA 1975). Appellants have not demonstrated reversible error in the trial court's decision to grant foreclosure. See Uwanawich v. Gaudini, 334 So.2d 116 (Fla. 3d DCA 1976).
NOTES
[1] Formerly known as First Federal Savings and Loan Association of Defuniak Springs, Florida.
[2] Paragraph 18 of the mortgage provides:

Acceleration: Remedies. Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage .. . Lender prior to acceleration shall mail notice to Borrower ... specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property... . If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding.
[3] She testified: "Our computer automatically calculates it [interest] based on what the computer is given for the interest rate and the principal balance."
[4] The sum consists of the following: $233,345.97 as principal; $243,556.84 as interest from December 1984 to December 1992 (date of final judgment); $17,140.14 as late charges; $62,406.56 as costs; and $50,000 as attorney fees.
[5] Paragraph 7 provides in pertinent part:

If Borrower fails to perform the covenants and agreements contained in this Mortgage ... then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs... . Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law.