THOMPSON, Judge.
Helen R. Tompkins, a/k/a Helen R. Black-mon,[1] timely appeals a final judgment of foreclosure entered in favor of appellee, Jim Walter Homes, Inc. Blackmon argues that Jim Walter was precluded from foreclosing on the subject property because (1) Black-mon sent the delinquent mortgage payments by United States mail before Jim Walter filed the foreclosure complaint, and (2) Jim Walter was required to give her actual notice before filing for foreclosure because it previously had accepted late payments.[2] We disagree and affirm the trial court’s final judgment.
The terms of the mortgage required Black-mon to repay the mortgage amount in monthly installments due the 5th day of each month with a 30-day grace period. Black-mon made the majority of her 163 payments after the due date, 60 of which were made after the 30-day grace period had expired. Blackmon’s account was turned over to an attorney for foreclosure on 19 March 1992. The attorney sent Blackmon a certified letter, dated 23 March 1992, stating that her past due account would be reinstated if she paid the past due amount plus attorney’s fees of $75.00. Blackmon testified that she never received the letter, although it was addressed to the correct post office box. The letter was returned to Jim Walter marked “unclaimed.” On either 8 or 9 June 1992, Blackmon sent Jim Walter a payment of $618.30 for April, May, and June. Blackmon had not made the March payment. On 16 June 1992, Jim Walter filed a foreclosure complaint against Blackmon. The trial court held a hearing and entered a final judgment of foreclosure finding Blackmon owed Jim Walter $14,-366.50, including principle, interest, and costs and attorney’s fees.
Blackmon’s first argument on appeal is that Jim Walter had no right to accelerate the mortgage because Blackmon mailed her payment after the default, but before Jim Walter gave notice of its election to accelerate. See Campbell v. Werner, 232 So.2d 252, 256 (Fla. 3d DCA 1970). The 8 June 1992 check indicated that it was payment for April, May, and June, but Blackmon also was in default for March. This check, therefore, did not bring Blackmon’s account current. As Blackmon made only a partial tender of the arrearages, Jim Walter was not prevented from exercising its option to accelerate the mortgage. River Holding Co. v. Nickel, 62 So.2d 702, 704 (Fla.1952). The trial court, therefore, did not err in entering the judgment of foreclosure on this ground.
Blackmon’s second argument is that Jim Walter’s previous acceptance of late payments estopped Jim Walter from foreclosing without first giving Blackmon actual notice of the foreclosure. See, e.g., David v. Sun Fed. Sav. & Loan Ass’n, 461 So.2d 93, 96 (Fla.1984) (citing Campbell, 232 So.2d at 256-57). To establish an estoppel defense, the mortgagor must make a clear showing that the mortgagee engaged in misleading conduct which the mortgagor relied upon in believing that the mortgagee would not require strict performance under the mortgage terms. Lambert v. Dracos, 403 So.2d 481, 482 (Fla. 1st DCA 1981). In the instant case, Blackmon admitted that she received phone calls about her account and that she was threatened with foreclosure for insurance premiums allegedly owed. Additionally, notice of the default and acceleration may be imputed to Blackmon because the evidence revealed that Jim Walter’s certified letter was delivered to her post office box and that she failed to pick it up. See Belcher v. Ferrara, 511 So.2d 1089 (Fla. 3d DCA 1987) (imputing notice of attorney’s withdrawal and of trial date to client who failed to open mail or otherwise communicate with attorney). This evidence supports the trial court’s decision to reject Blackmon’s estoppel defense. As the trial court did not abuse its discretion *965 in rejecting Blackmon’s defenses, we affirm the trial court’s final judgment of foreclosure.
AFFIRMED.
HARRIS, C.J., and COBB, J., concur.

. A default was entered below against appellant Tina Kgos, and Blackmon raises no issues on appeal regarding Kgos.

. Blackmon also has raised a third issue, which is addressed in our discussion of the first two issues.