JOHN O. MATTHEWS ET AL., APPELLANTS, VS. WM. B. LINDSAY ET ALS., APPELLEES.

1. A tender of money due upon a promissory note or other contract is ineffectual unless followed by *profert in curia.*

2. A mortgage is a security only, and is not extinguished by a tender after the day the money becomes due ; and unless the tender is kept good and the money brought into court it will not stop the accruing of interest nor relieve from costs of suit. A purchase, therefore, at a sale under an execution against a mortgagor, the tender not being kept good, will not give the purchaser a title free of the mortgage.

3. A prayer by cross bill for a partition, in a suit brought to foreclose a mortgage, cannot be entertained.

4. A set-off is allowed in an action on contract, only of matters growing out of contract. Damages sustained by reason of annoying suits, malicious prosecutions, slander of title, injury to one's credit occasioned by such proceedings, though relating to the subject matter of plaintiff's suit, cannot be set off.

5. It is within the sound discretion of the Chancellor to receive evidence at the hearing not introduced before the Master.

6. Though a Chancellor may have erred in allowing an original deed to be put in evidence without proving its execution, yet where the pleadings and other evidence are such that the introduction of the original was immaterial and unnecessary to a proper disposition of the case and did not affect the decree, the error will be disregarded.

7. The finding of the fact of the delivery and acceptance of the deeds of partition in this case, being supported by a strong preponderance of testimony, must be affirmed.

Appeal from the Circuit Court for Marion county.

Bill to foreclose a mortgage. The case of Lindsay vs. Matthews, 17 Fla., 575, contains a history of the mortgage. One Cole owned about 150 acres of land in Marion county, and sold the same to Matthews in 1873. Matthews borrowed the money to make the purchase from Robinson, and to secure Robinson had the land conveyed to him by Cole. In 1874 Matthews sold an undivided half to Vinson, who took a deed from Robinson, and in 1875 Vinson sold and conveyed this undivided half to these complainants, Lindsay and others. In February, 1875, Matthews borrowed from Church $2,100 to pay Robinson, for which he gave Church his note payable March 1, 1877, with interest at 8 per cent., and Robinson conveyed to Church the other undivided half of the land at Matthews' request, to secure Church, who gave Matthews a written agreement to convey to Matthews on his paying the note at maturity, the agreement reciting the fact that Church held the land as security for Matthews' note.

The appellants purchased the interest of Church in November, 1876, taking an assignment of the note and a conveyance of the land by deed subject to the rights of Matthews. In the case in the 17th Fla., the question was whether appellants, grantees of Church, were owners in fee, Matthews having failed to pay the money at the time it

was due, or were the assignees of a mortgage interest, and it was held that they had a mortgage interest only.

This suit was then brought by Lindsay to foreclose this mortgage, Harris being made a party as having or claiming the interest of Matthews and as purchaser under an execution against him.

The bill alleged that in 1875 complainants and Matthews divided the property, and executed and delivered quit claim deeds to each other, Matthews conveying to complainants his interest in the westerly ninety-one acres, and they conveying to him seventy-nine acres east of a designated line. Complainants claim their mortgage lien covers, under the division so made, a large part of Matthews' 79 acres which they pray may be sold to satisfy the amount due them on the note and mortgage.

The defendant, Matthews, admitted the execution of the note and mortgage by himself to John Church, and the transfer of the same to the complainant by Church, but says that a short time after the maturity of the mortgage debt he tendered to the complainants the full amount of the mortgage debt; but they refused to receive the same, alleging as a reason that Stewart, one of the complainants, to whom the tender was made, could not accept the money until he could see Lindsay. Matthews again tendered the money to Albert S. Kells, one of the complainants, and he refused to receive it, alleging as a reason for his refusal that they, the complainants, held an absolute title to the land, and not a mortgage upon it, and would not accept the money and cancel the mortgage. Matthews' cross bill alleges that after the aforesaid tenders made by him, complainants, intending to defraud him, brought an action of unlawful detainer against him to dispossess him of the land. That being unable successfully to defend said suit at law, he was forced to file a bill in chancery, and was

thereby compelled to incur large expense and cost in and about maintaining his rights in the premises. That pending this litigation the fraudulent claim of the appellees greatly damaged the appellant, Matthews, by casting a cloud upon his title, preventing him from selling any part of the property, or raising money with which to improve it; and that they caused his land to be sold at sheriff sale, and by claiming that they had a good title to it, and so announcing at the sale, caused the property to sell for an amount greatly less than its value. His cross bill prayed that he be allowed to set off this damage thus sustained by him against the mortgage debt.

Appellees demurred to this answer and cross bill, and the court sustained the demurrer and struck out so much thereof as asked to set off the damage, etc.

The defendant, Harris, one of the appellants, set up his defence that after the decree rendered by the court in chancery, cause of Matthews vs. Lindsay *et al.*, above referred to, and while said decree was of force and not superseded, he purchased all the interests of Matthews in said mortgaged lands under and by virtue of a sheriff's sale under sundry executions against Matthews; that at the time of his purchase the mortgage lien on the property had been divested by reason of tenders made by Matthews pursuant to the decree of the court, said decree then being of force and not superseded; and that appellees could not assert a mortgage lien against the land. He also charges that the mortgage lien had previously been divested by reason of former tenders made by Matthews. He also prayed a partition of the land, alleging that there never had been a partition between Matthews and appellees; and that appellees were then in possession of about four acres of the land to which he acquired title under said sheriff's sale, etc. His answer and cross bill prayed injunction to restrain appellees from

gathering the oranges growing upon the strip of land in controversy, and the court granted the injunction. ' Harris' answer also showed that there never had been a partition of the land between Matthews and the appellees ; that mutual quit claim deeds had been executed by them and left in escrow to be delivered when a survey should have been made to verify the line as mentioned in said deeds as the dividing line; in order to make the same accord with an agreement for division previously made between them, by which for the purpose of an equitable partition it was stipulated that appellees should have six acres of land more than Matthews. That in the deed so left in escrow the draftsman had made a mistake, and in dividing the land gave to appellees twelve acres more than Matthews. That appellees by fraud obtained possession of the deeds ; and placed that from Matthews to them on record, but kept that from them to Matthews for about five years, and filed it in the clerk's office on the day of commencing this suit. He prayed a cancellation of the deeds, etc.

Appellees demurred to this answer and cross bill, and the court sustained the demurrer, and struck from the answer and cross bill all that portion which prayed for partition of the land, etc.

The appellant, Matthews, then applied to the court for leave to file an amended answer and cross bill, but the court refused the motion. The cause having been referred to a master after the same was at issue, the master reported in favor of the appellants upon all the issues raised by the pleadings before him. Appellees filed exceptions to the report and upon final hearing the court sustained the exceptions and rendered a final decree in favor of the appellees.

From this final decree an appeal was taken and errors duly assigned.

*S. D. McConnell* for Appellants.

*Fleming & Daniel* on same side.

We will consider the grounds of appeal in the order in which they appear in the assignment of errors.

1st. The court in sustaining the demurrer to the answer and cross bill of James A. Harris.

The defence set up in Harris' answer and cross bill was that the lien of the mortgage to Lindsay and others had been divested by the tenders made by Matthews before the decree of the court in the suit of Matthews vs. Lindsay and others, and by the tender made subsequent to the decree and by the direction of the Circuit Court, and that while the decree of the Circuit Court was of force and not superseded he purchased the mortgaged lands at sheriff sale by virtue of executions issued on divers judgments against Matthews, one of which antedated the mortgage itself; that the land had never been partitioned as between Matthews and complainants, that the deeds by which it was claimed the lands had been divided had never been delivered, but obtained by the complainants by fraud, and there being no partition the foreclosure suit could not be maintained because the land would have to be partitioned before it could be sold as prayed for in the bill, and a suit for foreclosure and partition cannot be joined in the same bill.

The decree of Judge Dawkins in the case referred to, to wit: that the lien of the mortgage should cease on the tender of the amount due on the mortgage within sixty days from date of said decree and refusal of the same was not superseded at the date of the sheriff's sale to Harris because to supersede a decree a bond must be given with one or more sureties. McClellan's Digest, page 167, sec. 2; Ib., page 840, sec. 3.

In this case there was no proper bond. This bond filed was an illegal bond and in violation of Rule 5th of the Rules for the government of the Circuit Court, which is as follows: "No attorney or other officer of court shall enter himself or be taken as bail in any criminal case or as security in attachment, appeal or writ of error or other proceedings in court, on pain of being considered in contempt and of having the proceedings dismissed on account thereof." Rules of Court, art. 1, sec. 5, page 9.

"Under the statute regulating appeals in chancery from final or interlocutory decrees a bond is not necessary to perfect an appeal. The only result attending a failure to give bond under the statute is that the appeal does not operate as a supersedeas." Kilbee & Barnes vs. Marie Myrick, 12th Fla., 416.

To show that the goods were not delivered we refer to the testimony of Matthews, Harris and Ball. Matthews' testimony, 176; Harris' testimony, 260, 261; Ball's testimony, 474, 478.

Lindsay makes no satisfactory explanation of how he got the deeds. That he obtained the deed to Matthews for a wicked and fraudulent purpose is apparent. He had concluded to ignore his contracts with Matthews and claim the fee in the land he had previously recognized as Matthews'. It was very important to the success of this nefarious project that he should obtain possession of the deed which he and his associates had executed to Matthews. This being done they commenced their suit for possession. See Lindsay's testimony, pages 833, 339.

Lindsay says that he had no purpose to serve, but the facts and circumstances show that he did have a fraudulent design in suppressing the deed. When this court declared the instrument he was relying on was a mortgage, and that his game was of no use, it would not work, it

could not win, he sent the deed to his attorney, Mr. Reardon, to be recorded.

Matthews had nothing to do with the recording of the deeds. He had not in truth and in fact, and certainly the evidence does not show that he had.

But the recording of a deed while in escrow is not equivalent to delivery. See 32 Vt., 341.

If the deeds were not delivered there was no partition and the court erred in holding that there was a partition. If there was not, the specific land could not be sold under the mortgage. And foreclosure and partition cannot be united in one suit. Buckmaster vs. Kelly, 15th Fla., 199.

The facts and the law relating to the tenders we will discuss under the second ground of appeal, which is:

Second. That the court erred in sustaining the demurrer to the answer and cross bill of the defendant, Matthews.

The first defence sought to be set up in the answer and cross bill of Matthews was the various tenders whereby the lien of the mortgage was divested.

At common law a tender made at the law and refused satisfied the condition of the mortgage as fully as if payment had been made and revests the estate in the mortgagor, who may enter forthwith. 2 Jones on Mortgages, sec. 891.

The rule in New York and Michigan is that a tender of the amount due on a mortgage after the day fixed for payment is a discharge of the lien just as much as payment is, and in the same way that a tender at common law made upon the day named in the condition for payment has this effect. The lien of the mortgage is thereby *ipso facto* discharged and the holder of the mortgage can only look to the personal responsibility of the person liable for the mortgage debt. To have this effect it is not even necessary that the money be brought into court, or that it should be shown

that the tender has ever since been kept good. This view of the effect of a tender made after the law day is founded upon the departure made from the common law doctrine that the mortgage creates an estate in fee in the mortgagee subject to be defeated by the performance of the condition, the mortgage being regarded merely as a pledge of the land of which the mortgagor remains the owner, the tender after breach of the condition is regarded as having the same result as a tender made in case of a pledge of personal property, in respect to which the rule is that a tender and refusal at any time of the full amount of the debt extinguishes the lien of the pledge. 2 Jones on Mortgages, sec. 893; Kortright vs. Cady, 21 N. Y., 343.

Our law in regard to the force and effect of a mortgage being similar to that of New York, we think this court can have no hesitation in adopting the rule established in Kortright vs. Cady.

The testimony shows that there were three tenders made.

The first made by Matthews thirty-five days after the maturity of the notes secured by the mortgage.

Second tender made by Dunn on the 24th day of May, 1877, previous to any suit between the parties.

Third tender subsequent to suit and under decree of July 29th, 1878, when $2,505.06 was tendered.

We contend that the first tender was sufficient. It is not shown that the money was counted out, but there was an offer to pay and refusal.

Where certain tax commissioners refused an offer to pay taxes, and it was claimed that no actual tender had been made, the Supreme Court of the United States held that "the law does not require the doing of a nugatory act as would have been a formal tender of payment after the action of the commissioners declining to receive the taxes

from any person in behalf of the owner." Tracey vs. Irwin, 18 Wall., 551; referring to 10 Peters, 1, and 9 Wall., 326 ; 2d Wash. on Real Prop., page 165.

Why will not the same principle apply in this case? The mortgagees refused to receive the money due. In the first instance because Stewart, to whom the offer to pay was made, could not accept payment without first consulting Lindsay. And in the second instance they declined because they had come to the conclusion that they held the fee. Did not these refusals make a formal tender unnecessary ? A mere formal tender would have been a nugatory act, which the law does not require.

The second defence was an attempt to set-off unliquidated damages.

" The right to an offset in chancery exists independent of the statute and is controlled only by the general principles of equity." Jeffreys vs. Evans, 6 B. Monroe, 119, cited in 43 Am. Decis., 158.

Upon a bill to foreclose the mortgagor is allowed to setoff a debt due him by complainant, not only in cases where this would be allowed in actions at law, but also in cases of peculiar equity not strictly within rules of law. 2 Jones on mortgage, §1496.

Courts of chancery, will under circumstances of peculiar equity, entertain a bill for an offset and liquidate the matter or allow the party to proceed at law and obtain a liquidation and then decree an offset. Amr's of Smith vs. Amr's of Wainwright, 24 Vt., 105.

Upon the foreclosure of a mortgage by a bill in equity the defendant may set-off the demand he has against the complainant which would be the proper subject of the setoff in a suit brought by the complainant at law to recover the amount due upon his mortgage. Waterman on Set-offs,

62

2d Ed., §426, (1 Ed., 390); Chapman vs. Robertson, 6 Paige, 627; Holden vs. Gilbers, 7 Paige, 203.

Our statute on this subject of set-off in suits of law is: "All debts or demands mutually existing between the parties at the commencement of the action, whether the same be liquidated or not shall be proper subjects of set-off." McC's. Dig., p. 831, §82.

The set-off sought to be made a defence in this suit is a peculiar one and probably no such condition of facts was ever before presented to a court.

Damages growing out of the very transaction, the complainants in this suit contending at one time that the instrument now declared upon as a mortgage was an absolute deed standing and clouding the title of Matthews, institutes a suit to dispossess him and fraudulently suppressing papers which showed their former acknowledgement of the fee in him, and thus obstructing and preventing his use of the property. Surely a demand growing out of such injuries and existing at the commencement of this suit though unliquidated would be a proper subject of set-off under the statute. And if in law then in equity.

The third ground of appeal is embraced in the second.

The amended answer sought to be set up the same defence, but more at length.

The fourth ground we will not discuss. We are inclined to the opinion that the Chancellor, at any time before the close of the final hearing, can admit at his discretion testimony from either side.

The fifth ground of appeal is: "That the court erred in admitting in evidence, on the objection of the solicitor for defendant, the original deed from John O. Matthews to Lindsay and others.

That this deed was improperly admitted is determined

by the decisions of this court in Hogans vs. Carruth, 18 Fla., 587; Stewart vs. Stewart, 19 Fla., 846.

The sixth and seventh grounds of appeal are included in the errors already considered.

In conclusion we contend that the court below has not done what it set out to do, that is to establish the interests of the respective parties as indicated by the agreement of December 3, 1875.

White's survey runs with angle of 7. 46. 15 east, and makes six acres in the triangle.

Survey of Richards and White starting from same point runs first with angle of 11.10, and makes six acres in triangle the second with an angle of 5.6 to make the difference in the pieces west and east of the dividing line six acres.

The order was to run and ascertain a true and correct dividing line between the parties according to the agreement of December 3, 1875.

We contend that this agreement construed in the light of the weight of the testimony means that the difference between the pieces should be six acres and not twelve as determined by the court below.

*John G. Reardon* and *George P. Raney* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

The first ground on which appellants pray a reversal of the decree is that the court erred in sustaining the demurrer to Harris' cross bill. This cross bill alleged that by the tenders by Matthews the lien of the mortgage was extinguished; that he had become the owner of Matthews' inest by his sheriff's deed under executions against Matthews, and he prayed a partition as between himself and complainants.

As to the tenders, without examining the question as to

the amount tendered, the allegations and proofs show that Matthews offered complainants the money, but the tender was not followed by a *profert in curia*. Such a tender was held to be ineffectual in Spann vs. Baltzell, 1 Fla., 301; Forcheimer vs. Holly, 14 Fla., 239; Co. Litt., 207, *a*. But it is argued that the tender discharged the mortgage.

A mortgage is but a security for the payment of the debt mentioned in it. That which discharges the debt will discharge the mortgage lien. To discharge the debt by a tender, such tender must be kept good, and a plea of tender, as has been decided in the above cited cases, is ineffectual unless it appear that the creditor can have his money when he wants it. "It ought to appear that the mortgagor from that time [of the tender] always kept the money ready," otherwise the interest will run on. Gyles vs. Hall, 2 P. Wms., 378, per Lord Chancellor Hardwicke. Should the mortgagee, after tender and refusal, demand his money and find the mortgagor not ready to pay in accordance with his previous tender, interest will run on as if no tender had been made, until the money is paid or brought into court. Columbian B. Asso. vs. Crump, 42 Md., 192.

"The appropriate office of a tender is to relieve the debtor from subsequently accruing interest and the costs of enforcing, by a suit, the obligation which by the tender of payment he was willing to perform. The debt still remains. * * * The tender does not pay or discharge the debt; and though it will avail to arrest the accruing of interest and to free the debtor from costs, it will be deprived of that efficacy by a subsequent demand and refusal. If legal analogy is to be pursued, it could lead no further than to deprive the mortgage of operation beyond the amount due when the tender was made, leaving the question of subsequently accruing interest and costs to be varied by the subsequent demand and refusal. The instances

in which a tender and refusal amount to payment and will operate as an extinguishment, are those in which the obligation is in the nature of a gratuity, without any precedent debt or duty, and the discharge is an accidental and not a necessary consequence of the tender and refusal, there being no debt or duty remaining whereon to ground an action." 6 Bac. Abr., 456, *tit. Tender;* Shields vs. Lozear, 34 N. J. L., 505-6.

The rule prevailing in New York and in Michigan that a tender after a debt became due operates to discharge the mortgage and to leave the mortgagee only a personal remedy for his debt, has not been adopted in other States. Says the court in Crain vs. McGoon, 86 Ill., 433: "We fail to appreciate why a court of equity, while interposing its authority to mitigate the rigor of the common law rule against the mortgagor, should, at the same time, extend and make more rigorous the rule against the mortgagee. We do not perceive how this can be said to be in pursuance of the natural principles of justice. If a tender is made but not accepted, and is kept good, it is plainly right that the mortgagee shall have only the tender. The mortgagor has been deprived of the use of his money and the mortgagee has had ample time to reflect upon his rights and has been at liberty to have them, whenever he would, by the acceptance of the tender. But when the tender is not kept good the mortgagor has the use of the money and the mortgagee, however ill advised he may have been at the time of tender, has no opportunity for revising and reconsidering his judgment and thereafter accepting the money tendered. * * When it is reflected that no serious hardship is imposed on a party making a tender by requiring him to keep it good, it would seem clearly unjust, under circumstances like those alluded to, to require a party to whom a tender is made, after the day

of payment has passed, to elect at once to accept or reject it, at the peril of losing his security if he misjudges as to his rights. * * The policy of the courts of equity is against forfeitures ; and in this State, to discharge the mortgage would be, in very many instances, in effect to forfeit the debt. We think the preferable rule is, where the tender is made after the day the debt secured by the mortgage is due, to require that it shall be kept good in order that it may operate to discharge the mortgage."

A tender, to be effectual, as has been decided in this State, must be kept good ; there must be *profert in curia.* Otherwise the debt is not discharged, nor is the interest stopped. If a mere tender and refusal of it operates to discharge the debt or the security, a subsequent demand or an offer to accept the money would not create a right of action at law or in equity, because the debt has ceased to exist as the result of the tender. If there be a tender and a refusal of it, and the creditor afterward sues, a plea of tender with profert and bringing the money tendered into court will give effect to the tender and extinguish the debt and the security.

As to Harris' title under the sheriff's deed, while it may be good as against Matthews, (though we cannot determine it here) yet it cannot avail as against the mortgage. Matthews never had a title or right which was not from its inception subject to the payment of the money demanded by complainants.

As to the prayer by Harris for a partition, it cannot be entertained in this suit brought to foreclose a mortgage on the very land he claims. Buckmaster vs. Kelly, 15 Fla., 199 ; Mattair vs. Payne, Id., 685. The cross bill seeks to put in issue and establish his legal title. This must in all such cases be established or unquestioned before partition can be had.

The second error alleged is in sustaining the demurrer to Matthews' cross bill. This cross bill alleges that by reason of the refusal of complainants to accept the tenders and their assertion of title, their bringing suit against him to recover possession under their mortgage, driving him to bring suit to enjoin their suits at law, slandering and clouding his title and destroying his credit, and putting him to great trouble, annoyance and expense in defending and prosecuting his rights, all on account of the illegitimate and wrongful claims and conduct of the complainants under the mortgage, he has sustained great damage and expended large sums of money, to an amount larger than their demand, and prays that the same may be set-off against the mortgage debt. The claims sought to be set-off are for *tort*. It is not a debt or demand capable of computation as in matters of contract. Damages arising out of tort are not the subject of set-off, either at law or in equity. 7 Wait's Act. & Def., 483, and citations. Our statute prescribes that debts or demands mutually existing between the parties shall be proper subjects of set-off. A set-off can be allowed in an action on contract of matters only growing out of contract. Robinson vs. L'Engle, 13 Fla., 482.

The third ground of error is the refusal of the court to allow Matthews to file an amendment to his answer. The amendment offered was a repetition, in more detail, of his plea of set-off and it was rightly refused.

The fourth ground of appeal is that the court allowed complainants' solicitors to read upon the final hearing a copy of the record of the judgment of Williams vs. Matthews, as it had not been offered in evidence before the Master who took the testimony. This was within the discretion of the court. 1 Daniel Pr., 890. But even if the court had been wrong, the paper offered was of no consequence and the existence of the record of the judgment was

immaterial for any purpose in this case and no error in the decree was occasioned by putting in the paper.

The fifth ground is the admission in evidence of the original deed of Matthews to complainants without proof of its execution. This might have been error if it was material to have the original deed before the court for the purposes of the case. The defendants had in their pleadings and in Matthews' testimony admitted the execution of the deed, though denying its *delivery* to complainants. The deed itself if proved did not show anything not admitted by defendants in their answers, to wit: that it had been signed, and the description of the land. The question of its delivery was fully investigated without its presence, its existence and contents being admitted by both parties. Its introduction having been unnecessary and immaterial to either party, no error in the decree did or could flow from it.

The sixth and seventh grounds are the sustaining the exceptions to the report of the master and in rendering the final decree against the defendants.

These grounds involve a consideration of the whole evidence material to the case. The record is comprised of over 550 pages and we have read and considered the whole of it, but we cannot be expected to quote or recapitulate it. It would unnecessarily swell the volume of the report of the case without benefit to any one.

The master reported in favor of the defendants. The Chancellor took an opposite view of the case, set aside the conclusions of the master and decreed the prayer of the complainants.

Our conclusions are that the complainants established their mortgage and the debt secured by it; that the debt remains unsatisfied; that Matthews' several tenders were ineffectual to destroy the lien of the mortgage or to abate

the interest accruing after tender for the reason that the tender was not kept good by paying the money into court. The defendant cannot be allowed thus to destroy the mortgage and keep his money beside.

The parties had made and signed December 3, 1875, an agreement in writing to make a partition of their joint possessions ; a survey was made of which both parties had copies written by Matthews and the one in the hands of complainants is certified by Matthews to be a true copy, which bears date December 6th, 1875, on the back of which are figures in Matthews' handwriting indicating the quantity of land each party would get by the division line as run by the surveyor, to wit: 91 and 79 ; the quit claim deeds executed by the parties December 25, 1875, were drawn in the handwriting of Matthews, describing the division line as in the surveyor's certificate, conveying to complainants ninety-one acres, and to Matthews seventy-nine acres ; both parties occupying and improving thereafter on their respective sides of this line ; complainants building a fence on the line in the presence of Matthews without his objecting ; all these facts, fully established by the proofs, show that the deeds were the deliberate acts of the parties. But Mr. Matthews says that according to their agreement of December 3, 1875, complainants were to have but six acres more than himself and that the deeds after being executed were not delivered to the respective releasees, but were mutually delivered to a custodian in escrow, and not to he delivered until a satisfactory survey should be made, and knew nothing of any survey being made after the agreement, and before executing the deeds. But the facts appear that he drew up the deeds from a definite certified survey on December 25, copying the description of the dividing line from the surveyor's certificate dated December 6th, 1875, some days

after the date of the agreement to make division, the deeds specifying the acres in each portion conveyed.

The proof is overwhelming that the deeds were delivered to and received by the respective releasees after being executed, and afterwards on the same day were delivered by them severally to a third party for safe-keeping, not in escrow, with no condition except they were to be kept till called for. Both deeds were afterwards delivered by mistake by the depositary to one of the complainants, who carried them away and who sent the deed executed by complainants, as soon as he discovered he had it, to a person in Ocala to be delivered to Mr. Matthews and it was subsequently left at the clerk's office for him, where he found it. Again, Mr. Matthews, after this, drew up a mortgage from himself to another party on the land, describing it as seventy-nine acres, not as an undivided half of any parcel, but as his several property. He also testifies that his attention was first called to the fact that his deed called for seventy-nine acres only, instead of what he was entitled to, several years afterwards by his attorney and about the time the bill in this case was filed. There is a large mass of testimony in the record to which it is unnecessary to refer farther.

According to the whole evidence the delivery and acceptance of the deeds is proved by a very strong preponderance of evidence; such a preponderance as would inevitably control the verdict of a jury.

The decree is affirmed.