**FIRST TEXAS SAVINGS ASSOCIA-TION, First Gibraltar Bank, FSB, Plaintiffs,**

v.

**COMPROP INVESTMENT PROPERTIES LTD., et al., Defendants.**

**No. 89–93–CIV–T17(A).**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 8, 1990.

Gregory E. Mierzwinski, Henry A. Stein, Rudnick & Wolfe, Tampa, Fla., for plaintiffs.

Simson Unterberger, Tampa, Fla., for Glenn James, receiver.

Edward M. Waller, Jr., Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., John A. Grant, Jr., Peavyhouse, Grant, Clark, Charlton, Opp & Martino, P.A., Gregory R. Riehle, Shumaker, Loop & Kendrick, Edna Elliott, J.D., P.A., Timothy A. Hunt, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. Tampa, Fla., Michael B. Lee, Fouts & Moore, Houston, Tex., Clifford R. Opp, Jr., Peavyhouse, Grant, Clark, Charlton, Opp & Martino, P.A., Tampa, Fla., for defendants.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiffs, First Gibraltar Bank, FSB and the Federal Deposit Insurance Corporation as Receiver of First Texas Savings Association's Motion for Partial Summary Final Judgment as to the Counterclaims and Affirmative Defenses raised by Defendants/Counterclaimants Comprop Investment Properties, Ltd., Gulf South Resources, Inc., Harvey T. Estes and Suzan Estes on the grounds that

1. Defendants allegedly waived all defenses against the enforcement of the loan documents when they executed two forbearance agreements.

2. Any defenses or claims that Defendants may have had against First Texas, did not survive as against the FDIC or First Gibraltar by action of the *D'Oench Duhme* doctrine.

### FACTS

The uncontroverted facts as alleged in Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment indicate the following:

1. Plaintiff, First Texas and Defendants Comprop Investment Properties, Ltd. through its general partner, Gulf South Resources, Inc., entered into an agreement for construction loan financing on real property located in Hillsborough County, Florida. This financing was secured by a First Real Estate Mortgage and Security Agreement and a personal guaranty that was executed by the Co–Defendants, Harvey and Suzan Estes.

2. The Note contained a one-year term and was to mature in December of 1986.

3. Prior to the maturity date of the note, a Renewal and Extension agreement was entered into by the parties extending the maturity date to March 19, 1987.

4. Subsequently, two forbearance of enforcement agreements were entered into

between the parties, extending the time for Defendants' performance until August 31, 1987.

5. In October of 1987, First Texas commenced an action to foreclose the Mortgage and to enforce the Note and Guaranty provisions against the parties.

6. Defendants, Comprop and the Estes, asserted affirmative defenses and counterclaims, alleging, *inter alia*, bad faith, fraudulent inducement and breach of contract by First Texas.

7. On December 27, 1988, the Federal Home Loan Bank Board declared First Texas to be insolvent and appointed the FSLIC as Receiver for First Texas.

8. On December 28, 1988, pursuant to an acquisition agreement between the FSLIC and First Gibraltar, First Gibraltar acquired all of the secured assets of the insolvent First Texas, which included the collective loan documents for Comprop and the Estes (i.e. the Note, Mortgage, Guaranty, Renewal and the Forbearance agreements).

9. On January 19, 1989, this Court granted FSLIC's Petition for Removal of this action from the Thirteenth Judicial Circuit Court in and for Hillsborough County, and by Order dated April 11, 1989, this Court granted First Gibraltar's Motion to Intervene as Party Plaintiff.

10. On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989, P.L. 101–73, 103 Stat. 183 ("FIRREA") was signed into law, and all of the FSLIC's interest in the unsecured liabilities of First Texas were assigned to the FDIC, as manager of the FSLIC Resolution Fund.

Other facts relative to the loan agreement between First Texas and Defendants are disputed. In August, 1985, First Texas issued a Construction Loan Commitment to Comprop. It is here that the parties disagree upon the facts.

1. Defendants allege that First Texas agreed to provide a Construction loan as well as a Permanent loan commitment.

2. Defendants paid a commitment fee, an application fee and other fees in order to secure both the construction loan and the permanent financing from First Texas and The Windsor Group.

3. After loan documents were executed between the parties, Defendants allege that First Texas breached its written agreements by failing to timely fund draw requests, delaying funding unreasonably and requiring unreasonable demands from obligors, that exceeded the scope of the parties' agreements.

4. Defendants further allege that First Texas reneged on its Permanent Financing commitment. As a result, Plaintiff, First Texas' actions prevented timely completion of the construction project and made Defendants' performance impossible.

Plaintiffs allege:

1. Defendants waived any and all defenses to enforcement of the loan documents and counterclaims by virtue of their subsequent execution of Renewal, Forbearance and Modification Agreements.

2. In addition, any oral representations allegedly made by First Texas are unenforceable because the FSLIC and First Gibraltar acquired the subject loan documents free from all defenses and claims pursuant to the *D'Oench, Duhme* doctrine.

## STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.* at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The Court is satisfied, and the parties have stipulated, that no factual issues are in dispute which would prevent entry of summary judgment.

Before the Court are the following questions:

1. Did Defendant/Counterclaimants Comprop and the Estes effectively waive all claims to and defenses against their loan contract with First Texas Savings Association?

2. Did the FSLIC and subsequently First Gibraltar acquire the loan documents free from all defenses and claims asserted against Defendants/Counterclaimants First Texas by Comprop and the Estes?

## DISCUSSION

### I.

■ Several facts in the Plaintiffs' case have not been proven, and as a result, this Court is unable to grant summary judgment. A critical factor is that this Court has determined that ambiguities exist in the collective loan documents, which prevent it from rendering judgment without further fact finding. First, the Real Estate Mortgage and Security Agreement dated December 19, 1985 implies by reference to the U.C.C.'s adoption in Florida, that Florida law is controlling in the event of a dispute. (See page 2 paragraph G.) Second, the Renewal and Extension of Note executed December 18, 1990, indicates that applicable federal or Texas law should control disputes. (See page 5, paragraph 11). Third, the agreement dated May 1, 1987 indicates that the parties' agreement must be governed by and construed in accordance with the laws of the State of Florida. (See page 5 paragraph 10). Finally, in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) the Supreme Court decided that federal law governs in cases involving the rights of the FDIC, and when no federal statutes are applicable, the Court must turn to federal common law.[1] These ambiguities place the burden upon the Court to harmonize the laws where possible or otherwise determine the parties' intent regarding which law should control.

■ Insofar as contract language may be deemed ambiguous, Florida law dictates that any ambiguity will be interpreted against the party who selected the language. Further, this principle of law is applicable to mortgages. *Consolidated Development & Engineering Corp. v. Ortega Co.*, 117 Fla. 438, 158 So. 94 (1934); *Rose v. Lurton Co.*, 111 Fla. 424, 149 So. 557 (1933). Under federal law, a party who drafts an agreement can expect to have ambiguities contained in the agreement construed against him and in favor of the non-drafting party. *Gibbs v. Air Canada*, 810 F.2d 1529 (11th Cir.1987), *rehearing denied* 816 F.2d 688; *Magnum Marine Corp., N.V. v. Great American Insurance Co.*, 640 F.Supp. 1142 (S.D.Fla.1986), *reversed* 835 F.2d 265. Further, under Texas law, since forfeitures are not favored, if the terms of a contract are fairly susceptible of an interpretation which will prevent forfeiture, Texas courts are inclined to so construe them. *Henshaw v. Texas Natural Resources Foundation*, 147 Tex. 436,

---

**1.** When federal common law applies, federal courts are free to use the "traditional common-law" including as one such source, state law, especially when the state has a most substantia¹ interest. *Riverside Park Rlty. Co. v. Federal Deposit Ins.*, 465 F.Supp. 305 (M.D.Tenn.1978).

216 S.W.2d 566 (1949). However, in the case at bar, no facts are presented regarding authorship of the loan documents. Therefore, absent a factual determination, this Court can only apply laws that are substantially the same in Florida, Texas and federal jurisdictions.

Plaintiffs first allege that Defendants/Counterclaimants waived all claims against First Texas Savings Bank, FSB regarding its right to enforce the executed loan documents, because the forbearance agreements specified that Defendants waived their right to assert defenses, set-offs, and counterclaims. However, the final forbearance agreement dated May 1, 1987, indicates that if the Lender fails to perform its obligations, then the Borrower may pursue its remedies at law or in equity. (See pages 3–4 paragraph 4.) These two clauses contradict each other, and give rise to another ambiguity that this Court must resolve after further development of a factual record.

Plaintiffs allege that the waiver agreements (executed between the parties,) are enforceable contracts supported by forbearance as consideration. In support of this argument, Plaintiff cites, *inter alia,* *Uwanawich v. Gaudini,* 334 So.2d 116 (Fla. 3d DCA 1976) *cert. denied,* 341 So.2d 1086 (Fla.1976). Under Florida law, it is well established that when a party believes he has a legal right, forbearance to enforce that right can be consideration for a new agreement, if the parties intend that exchange. E.g. *Uwanawich* citing *Henderson v. Kendrick,* 82 Fla. 110, 89 So. 635 (1921). However, under Texas law, an agreement to forebear prosecuting an unfounded suit is not sufficient consideration. *Estes v. Oilfield Salvage Co.,* 284 S.W.2d 201 (Tex.Civ.App.1955), 78 ALR2d 1410.

In defense to the allegation of waiver, Defendants assert that Plaintiff failed to act in good faith and to satisfactorily perform its promises in relation to the contractual agreement between the parties. The basis for any contractual agreement containing bilateral promises of performance is that the parties both bargain and perform their contractual obligations in good faith. However, what constitutes good faith, is a factual matter and is based upon a determination of the parties' standing, events which occur during the contractual relationship between the parties, and the degree of performance tendered by the parties to the agreements as a condition precedent to any subsequent modifications or waivers.[2] Consequently, because of the factual nature of a good faith determination and because of conflicts surrounding which law should apply to disputes, this issue cannot be decided summarily.

Defendants allege that they were coerced into accepting the terms of the forbearance agreement and that such coercion constitutes duress. In support of this argument, Defendants rely on *City of Miami v. Kory,* 394 So.2d 494, 497 (Fla. 3d DCA 1981) that established the following bipartite test for establishing duress:

1. Was the act sought to be set aside effected involuntarily and as such was not an exercise of free choice or free will?

and

2. Was this involuntary condition of the mind caused by some improper and coercive conduct on the opposite side?

In light of this test, Defendants argue that in this case, material issues of fact are present as to their state of mind when they signed the forbearance agreements. However, this argument must fail in light of the facts presented before this Court. By Defendants' own admission, no force or threat of bodily harm was made by Plaintiffs prior to Defendants' execution of the forbearance agreements. Defendants' memorandum, affidavits and depositions present no evidence tantamount to duress or from which coercion could be inferred. In addition, Defendants signed not one, but two forbearance agreements with Plaintiffs, which afforded Defendants the opportunity to investigate and challenge the sufficiency

---

**2.** It is also significant to note, that Plaintiffs, as well as Defendants in this case, thought that First Texas did indeed possess the right to foreclose.

of consideration in the interim, prior to executing the second agreement. Consequently, the Court can only conclude that Defendants made a deliberate, considered choice when it entered into the forbearance agreements.

Nevertheless, the fact that Defendants executed the forbearance agreements is not necessarily fatal to their claims because the Court finds an open issue remains as to resolution of the duress issue and consideration for the forebearance agreements. In addition, even though a condition can be waived, the language of the subject forbearance agreements indicates only that Defendants assented to waiver of defenses, setoffs and counterclaims, not conditions precedent. Whether the parties intended to assent to waiver of conditions precedent is a factual determination, especially in light of fundamental contract principles related to the valid formation of a contract.

In response to Plaintiffs' complaint, Defendants allege First Texas agreed to provide permanent financing, as evidenced by First Texas' commitment letter. Consequently, Defendants allege that Plaintiff, First Texas, was guilty of fraud and/or negligent misrepresentation in the inducement of the original Note and Mortgage because it neither kept its commitment nor disclosed that its financial difficulties might prevent its performance. Although not coined as such in Defendants' pleadings, these allegations constitute a condition precedent to the parties' agreement. Upon review of the collective loan documents, this Court finds that a genuine question of fact exists as to the existence of this condition precedent.

■ The Court notes further ambiguities surrounding the applicable law provisions of the parties' agreement. Under Texas law, a condition precedent is an event that must be performed before a right can accrue to enforce an obligation. *Bair v. Voelker Realty Co., Inc.*, 589 S.W.2d 867, 869 (Tex.Civ.App. Dallas 1979). Conditions precedent to an obligation to perform are those acts or events which occur subsequent to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. It may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may therefore, relate either to the formation of contracts or to liability under them. In absence of a particular limiting clause, when ascertaining whether a contractual provision is a condition, rather than a promise, the court must construe the contract as a whole and consider the intent of the parties. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex.1976).

Accordingly, since a condition precedent goes to the very essence of the agreement and to the right to demand performance, it is this Court's opinion that these factual matters are subjects rightfully to be determined at a trial on the merits.

■ Defendants further allege that First Texas breached its covenant of good faith, in that First Texas' own actions and the actions of its employees with respect to unreasonable delays and failure to fund draw requests and failure to convert the construction loan into permanent financing, frustrated the purpose of the parties' agreement and made Defendants' performance impossible or substantially difficult. Hornbook law implies a covenant of good faith and fair dealing into the performance and enforcement of every contract. (See *Rst.2d of the Law of Contracts*, § 205 and the Uniform Commercial Code Sections 1–201(19), 1–203, and 2–103(1).) Florida law indicates that good faith is part of every contract, *State of Fla. v. Teachers Ins. Co.*, 404 So.2d 735 (Fla.1981), as does Texas law, *City of San Antonio & City Water Board v. Forgy*, 769 S.W.2d 293, (1989 Tex.App.), adopting *Rst.2d of the Law of Contracts*, § 205 (1981). In addition, the drafters of the Uniform Commercial Code, (which is currently codified in Chapter 679 of the Florida Statutes, and Tex.Bus. & Comm. Code Ann. § 1.101 *et seq.* (Tex.U.C.C.1968)) looked towards the doctrine of bad faith as a protection against exploitive or opportunistic modification attempts when they made modifications not supported by considera-

tion enforceable. (See Uniform Commercial Code Section 2–209(1) and comments.) Because the performance of the parties to a contract is typically not simultaneous, one party may find himself at the mercy of the other unless the law of contract protects him. Therefore, one of the most important things the law of equity does is to facilitate exchanges that are not simultaneous by preventing one party from taking unfair advantage of the potential vulnerable position of the other, because of the requirement of sequential performances.

The good faith requirement is equally applicable to banks dealing with customers as it is to commercial, insurance and employment contracts. However, in determining the nature and extent of the covenant of good faith and fair dealing between the parties, courts generally use a measure of the justifiable expectations of the parties. As a result, where one party acts arbitrarily, capriciously or unreasonably, that conduct exceeds the justifiable expectations of the second party and consequently, the second party should be compensated for its damages and/or excused from performance.

In this case, if Defendants' allegations are true, the implied covenant of good faith would have been breached and as another condition precedent, might survive the waiver provisions and constitute a valid excuse for Defendants' nonperformance. In any event, this factual determination is not the proper subject of a summary judgment proceeding.

## II.

Plaintiff alleges that since the *D'Oench* doctrine operates to bar many defenses against the receiver of a failed bank, Defendants' claims and defenses should be barred. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench*, a creditor bank orally agreed that an obligor would not be required to pay an executed promissory note. The bank subsequently went into receivership under the FDIC. The Supreme Court held that the FDIC was entitled to rely on the bank's books and that unwritten agreements were not valid against the FDIC. *D'Oench*, at 457–58, 62 S.Ct. at 679–80. This doctrine was later codified regarding the FDIC at 12 U.S.C. § 1823, and has been applied to FSLIC receiverships.

In the case at bar, First Texas went into receivership and the FSLIC sold First Texas' assets to First Gibraltar. Consequently, since the public policy of allowing the FSLIC to rely on a savings and loan association's books is applicable to the assignor the same as it would be to the FSLIC, Plaintiffs allege that the *D'Oench Duhme* doctrine would bar Defendants' assertions or any oral agreements between the parties. Consequently, Defendants' allegations of fraud and breach of an oral commitment to fund the construction project permanently must necessarily fail. While it is true that oral statements relative to the permanent financing conversion would effectively be abrogated by the *D'Oench Duhme* doctrine, references contained in the written commitment proposals would not be affected.

In response, Defendants argue that the reasoning of the *Riverside* court is that the *D'Oench Duhme* doctrine cannot bar a defense based on the same agreement that the FDIC seeks to enforce. *Riverside Park Realty Co. v. FDIC*, 465 F.Supp. 305, 313 (M.D.Tenn.1978). The Court agrees. In the case at bar, First Texas initiated foreclosure long before it went into receivership. The FSLIC sold First Texas' assets, including Defendants' note, even though it knew that the valuation of the note was the subject of pending litigation. In the instant case, Defendants' affirmative defenses and counterclaims as stated in its pleadings and amended pleadings, can be divided into two categories; implied covenants and express covenants. However, the *D'Oench* doctrine applies only to oral representations that have not been reduced to writing so that an assignor may depend on written representations. In the case at bar, the collective loan documents and correspondence related to the loan documents contain the obligations of the parties. In addition, this lawsuit had been filed and counterclaims and defenses were asserted

prior to the loan assignment to First Gibraltar. Further, it is unclear from Defendants' pleadings whether or not their claims are based upon oral representations or written ones. Therefore, a determination of whether the *D'Oench* doctrine is operative in this case, is dependent upon further proof that Defendants are relying on oral representations rather than written ones. All of these factors are questions of fact to be determined by the trier of fact, and are not the proper subject of a summary judgment proceeding.

### III.

 Finally, it is well settled Florida law that courts of equity may refuse to foreclose when acceleration is unconscionable and the result would be inequitable and unjust. *Federal Home Loan Mortgage Corporation v. Taylor*, 318 So.2d 203 (Fla. 1st DCA 1975). In addition, foreclosure may be denied if any one of the following is determined to have occurred:

1. the right to accelerate was waived,
2. Mortgagee is estopped from asserting foreclosure because his conduct was such that the mortgagor could have reasonably assumed that the mortgagee would not foreclose,
3. Mortgagee failed to perform a condition acceleration is based upon,
4. payment was made after default but before notice of intent to accelerate was received by mortgagor.

*Delgado v. Strong*, 360 So.2d 73 (Fla.1978).

The facts presented before this Court so far, indicate that several of these factors are at issue and, under Florida law, should apply in the instant case. Consequently, this court is precluded from granting summary judgment. Accordingly, it is

ORDERED that Plaintiff's motion for summary judgment is DENIED.

DONE and ORDERED.