Paul H. CHERRY, Plaintiff/Counter–
Defendant,

v.

CHASE MANHATTAN MORT-
GAGE CORPORATION, De-
fendant/Counter–Plaintiff.

No. 8:01CV878T17TGW.

United States District Court,
M.D. Florida,
Tampa Division.

March 19, 2002.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND FINAL JUDGMENT FOR FORECLOSURE

KOVACHEVICH, District Judge.

This cause comes before the Court, on the Defendant/Counter–Plaintiff, Chase Manhattan Mortgage Corporation's (hereafter "Chase"), Motion for Partial Summary Judgment Count II of the amended complaint and counter-claim, request for Declaratory Relief and for Final Judgment on the counter-claim for foreclosure. (Docket No. 30). Plaintiff/Counter–Defendant (hereafter "Cherry"), filed a responsive motion thereto. (Docket No. 41). Chase filed a reply (Docket No. 65).

### STANDARD OF REVIEW

Chase requests Partial Summary Judgment on Count II, request for Declaratory Relief and a Final Judgment on the foreclosure counterclaim. Rule 56(b) of the Federal Rules of Civil Procedure allows for a summary judgment "in the party's favor as to all or any part thereof." A court should only enter a summary judgment when the moving party has sustained its burden of showing that no genuine issue of material fact exists and all of the evidence is viewed in the light most favorable to the nonmovant, *First Texas Savings Association v. Comprop Investment Properties, Ltd.,* 752 F.Supp. 1568 (M.D.Fla.1990) (following *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983)), and the moving party is entitled to a judgment as a matter of law. Rule 56(c) Federal Rules of Civil Procedure. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon

Andra Todd Dreyfus, Andra T. Dreyfus, P.A., Clearwater, for Paul H. Cherry, plaintiffs.

Dennis Michael Campbell, Clarke, Silverglate, Campbell, Williams & Montgomery, Miami, for Chase Manhattan Mortgage Corporation, defendants.

the mere allegations or denials of the pleadings; the nonmoving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of his position, and a jury must reasonably be able to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## BACKGROUND

For the purposes of this request for Partial Summary Judgment and for Final Judgment on its counterclaim, Chase has "adopted" Cherry's facts to avoid any factual disputes. Cherry presented additional disputed facts in his response, which Chase has addressed in its reply.

Cherry filed a complaint suing Chase for Count I, Fair Debt Collections Practices Act; Count II, request for Declaratory Relief; and Count III, Slander of Credit (Docket No. 1); followed by an amended complaint claiming Count I, Libel and Count II, request for Declaratory Relief. (Docket No. 10). Chase moved for a Motion to Dismiss Count I and II (Docket No. 14), which was denied. (Docket No. 17). Chase counter-claimed for foreclosure and reestablishment of the lost note in the answer. (Docket No. 20) and now requests this court enter a Partial Summary Judgment on Count II, request for Declaratory Relief and for Final Judgment on the foreclosure of that counter-claim and the amended complaint.

Chase has adopted the following facts for this motion. Chase held a mortgage on Cherry's home to which Cherry made timely payments until August 2000. Cherry stopped making payments on the mortgage after he received a letter from Chase acknowledging his satisfaction of the mortgage. Cherry notified Chase of the error through a customer service representative. Cherry, however, received a check dated August 15, 2000, as an escrow refund on the mortgage. Chase subsequently recorded a Satisfaction of Mortgage into the Pinellas County public records on October 19, 2000. On November 14, 2000, Chase sent Cherry a "Loan Reactivation" letter with a new loan number upon which to make the payments. During this time, Cherry was placing his mortgage payment into a bank account, which subsequently were put into an escrow account maintained by his attorney. These payments were not, and have not, been tendered to Chase. As a result of the failure to tender, Chase sent Cherry an acceleration warning on November 17, 2000, and again on March 16, 2001. Chase notified the credit bureaus as to Cherry's default status and moved for foreclosure. In a letter addressed to Cherry's attorney, dated April 24, 2001, Chase's attorney advised Cherry to make the mortgage payments to Chase. Chase recorded a Vacatur, Revocation, and Cancellation of Satisfaction of Mortgage (Vacatur) in the Pinellas County public records on May 3, 2001. Chase signed the Vacatur on March 21, 2001, and had it notarized on March 27, 2001. Chase has also been unable to locate the original note, dated October 15, 1997, and deems it to be lost.

## DISCUSSION

Chase requests a Partial Summary Judgment on Cherry's request for Declaratory Relief; as well as the enforcement of the mortgage foreclosure provisions regarding Cherry's alleged default; for payment of attorneys' fees; and foreclosure as a matter of law.

## Foreclosure

Chase accelerated Cherry's mortgage debt after determining he was in a default status under the mortgage provisions.[1] Chase claims that the right to foreclose under the note and mortgage is "absolute," *Home Owners' Loan Corp., v. Wilkes,* 130 Fla. 492, 178 So. 161 (Fla.1934), and, that this Court should enforce the security interest in the mortgage though Chase made an administrative error in entering a Satisfaction of Mortgage into the public records.

This Court will analyze the mortgage foreclosure and the request for reestablishment of the note and mortgage separately.

### *Mortgage*

■ First, Chase relies on the Florida Supreme Court decision in *United Service Corp. v. Vi–An Const. Corp.,* 77 So.2d 800, 803–04 (Fla.1955), which held that a Satisfaction of Mortgage "made through a mistake may be canceled" and a mortgage reestablished as long as no other innocent third parties have "acquired an interest in the property." Generally the court looks to the rights of any innocent third parties, and if none exist, equity will grant relief to a mortgagee who has mistakenly satisfied a mortgage before fully paid. *Chappell v. Nalle,* 119 Fla. 711, 160 So. 867 (1935). Both parties agree that the mortgage was released before the debt was fully paid. Neither party has presented any facts to this Court that implies the possibility nor existence of a third party interest. Although Cherry argues under *Biggs v. Smith,* 134 Fla. 569, 184 So. 106, 107 (1938), that a recorded satisfaction of mortgage is "prima facie evidence of extinguishment of a mortgage lien," *Biggs* does not apply this standard to mortgage rights affected by a mistake in the satisfaction. *Id.*

■ Therefore, on these facts, this Court acknowledges that a vacatur is a proper remedy for Chase to correct its unilateral mistake since "equity will grant relief to those who have through mistake released a mortgage." *United,* 77 So.2d at 803. Accordingly, this Court holds that an equity action is required to make a vacatur enforceable unless the parties consent to the vacatur or a similar remedy during the mortgage negotiation.

Second, Chase argues that this Court would be providing a windfall to Cherry in denying the foreclosure since Cherry did not "rely or advance anything" on the erroneous mortgage satisfaction. *Republic National Bank of Miami v. Manzini & Assoc.,* 621 So.2d 709, 710 (Fla. 3d DCA 1993). This Court will not provide either party to this action any windfall resulting from Cherry's failure to tender mortgage payments. The denial of the foreclosure is not made on reliance grounds and, therefore, this argument will not be further advanced.

### *Tender*

■ Cherry has not made a mortgage payment to Chase since August 2000, but claims to have made these payments into an escrow account, which he claims were paid to the escrow account because Chase recorded a satisfaction of his mortgage and, therefore, no mortgage existed. Cherry also claims that representatives of Chase rejected his initial attempts to make payments because of a lack of a valid loan number. Chase, however, correctly argues that payments made to an escrow account are not a proper tender of payment. *Matthews v. Lindsay,* 20 Fla. 962,

---

**1.** 21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following the Borrower's breach of any covenant or agreement in this Security Instrument.

1884 WL 2129 (1884) (requiring tender to be made to the court). Nor did Cherry make the required mortgage payments to the court as provided by Rule 67, *Federal Rules of Civil Procedure,* allowing for a "deposit with the court all or any part of such sum or thing, whether that party claims all or any part of the sum or thing." Further, Chase also correctly argues that Cherry's failure to tender the payments from the escrow account or make deposits with the court is more than just a "technical breach" of the mortgage and note. *Smiley v. Manufactured Housing Associates III Ltd. Partnership,* 679 So.2d 1229 (Fla. 2nd DCA 1996).

Chase may, therefore, recover the entire amount of the mortgage indebtedness, unless the court finds a "limited circumstance" upon which the request may be denied. *First Texas Savings Assoc. v. Comprop Investment Properties, Ltd.,* 752 F.Supp. 1568, 1575 (M.D.Fla.1990). Although not presented by Chase in its discussion of this case, the Court may refuse foreclosure, notwithstanding that the defendant established a foreclosure action, if the acceleration was unconscionable and the "result would be inequitable and unjust." *Id.* at 1575. This Court will analyze the inequitable result test and the limited circumstances by which the court may deny foreclosure.

First, this Court does not find the mortgage acceleration unconscionable by *assuming arguendo* that the mortgage was valid during the period that the Satisfaction of Mortgage was entered into the public records. Chase did not send the first acceleration warning until November 14, 2000, the fourth month of non-payment, followed by the second acceleration letter on March 16, 2001, the eighth month of non-payment. Although Cherry could have argued that a foreclosure action was an "inequitable" and "unjust" result after the Satisfaction of Mortgage was entered

on his behalf, the result does not rise to an unconscionable level since Cherry could have properly tendered the mortgage payments to the court.

■ Second, the following "limited circumstances" will justify a court's denial of foreclosure: 1) waiver of right to accelerate; 2) mortgagee estopped from asserting foreclosure because mortgagor reasonable assumed the mortgagee would not foreclose; 3) mortgagee failed to perform a condition precedent for acceleration; 4) payment made after default but prior to receiving intent to foreclose; or,

> 5) where there was intent to make to make timely payment, and it was attempted, or steps taken to accomplish it, but nevertheless the payment was not made due to a misunderstanding or excusable neglect, coupled with some conduct of the mortgagee which in a measure contributed to the failure to pay when due or within the grace period. *David v. Sun Federal Savings & Loan Assoc.,* 461 So.2d 93, 95–96 (Fla.1984) (citing *Campbell v. Werner,* 232 So.2d 252 (3rd Cir.1970)).

Chase fails to address this fifth circumstance in its motion, an apparent obfuscation of the case law before the court. This Court acknowledges that Cherry's facts do not satisfy the first four limited circumstances. Chase at no time advised Cherry that the acceleration right was being waived; nor is Chase estopped from asserting foreclosure on the mortgage because of the administrative error, and Cherry has not relied on this error to his detriment; and since Chase sent the acceleration letter to Cherry and a request for payment to his attorney, there can be no argument that Cherry believed Chase would not foreclose. Chase has performed all conditions precedent required by the mortgage provisions prior to notice of the acceleration; sending acceleration warn-

ings on November 17, 2000, and March 16, 2001. Cherry also has no argument for lack of notice of intent to accelerate after default since he has not tendered a payment since July 2000, thus placing him in default of the mortgage provisions, and he admits receiving the acceleration notices.

■ This Court finds, however, that this claim fails squarely into the final limited circumstance regarding intent to make timely payments. Significant factual issues exist as to the intent of Cherry to make or attempt to make timely mortgage payments to Chase. Cherry claims that he attempted to make the payments, but was told by a representative of Chase that there was no mortgage loan number upon which to apply the payments. As a result, the mortgage payments were placed into an account and later into his counsel's trust account as a mortgage escrow. Although these payments should have, at a minimum, been placed with the court to ensure tender during the resolution of the mortgage dispute, Cherry did take steps to accomplish timely mortgage payments. Although Cherry, through excusable neglect or a misunderstanding as to what his rights were after the Satisfaction of Mortgage was entered, failed to tender the payments, Chase is also not without fault; its conduct in entering a Satisfaction of Mortgage into the Pinellas County public records directly contributed to Cherry's failure to tender timely payments. Cherry's attempt at making the mortgage payments, coupled with Chase's improper satisfaction of mortgage fits squarely within the limited circumstance created to justify a court's denial of a foreclosure. Equity here requires a balancing between Chase's right to the security interest encumbered by the mortgage and Cherry's attempts to make timely payments. As such, these limited circumstances exist to ensure that a foreclosure remains an action in equity. In applying this analysis, this Court finds that equity requires that Chase's request for foreclosure be denied at this juncture and on application for summary judgment.

This Court recognizes that a foreclosure denial may be entered when the mortgagee's security interest is "not jeopardized." *David*, 461 So.2d at 96. Chase's security interest is not jeopardized since Cherry continues to be involved in this action, admits that an amount is due on his encumbered property, and asks this court to declare what his rights are under the current encumbrance. Chase has not presented any facts that would tend to prove this specific security interest is "jeopardized."

### Reestablishment of the Lost Note and Mortgage

■ Chase also requests, as part of the foreclosure counterclaim, the reestablishment of the note initially associated with the mortgage, as it is unable to produce the original note and provide by affidavit evidence of its loss. Chase has complied with the requirements of Section 673.301, *Florida Statutes* to enforce the provisions of the lost note, providing a sworn affidavit claiming that Chase was in possession of the note and was entitled to enforce it when the loss of possession occurred; the loss of the note was not the result of a transfer or lawful seizure; and Chase cannot reasonably obtain possession of the note because of the loss. This Court holds the note to be reestablished and that Chase has the lawful right to enforce the note upon the issuance of this order.

■ This Court also agrees that Chase may reestablish the mortgage through a Vacatur, Revocation, and Cancellation of Satisfaction of Mortgage. *United Service Corp. v. Vi An Construction Corp.*, 77 So.2d 800, 803 (Fla.1955) (allowing the Equity Court to reestablish a mortgage that was improperly canceled due to a mistake). However, this Court will deem the vacatur effective as of the date of this order. This

Court leaves the status of the vacatur during the disputed period, and specifically since May 3, 2001, to be resolved in subsequent proceedings.

### Declaratory Relief

■ Cherry requests declaratory relief claiming he is unaware of his rights under the mortgage. Chase correctly states that 28 U.S.C. Section 2201, requires an "actual controversy" in order to have any "rights declared." However, a genuine issue of material facts exists as to the validity of the note and mortgage between the period from August 2000 through May 3, 2001. Accordingly, this Court finds that an "actual controversy" does exist under the requirements of Section 2201. Although the Court agrees that Cherry did not make valid tender of payments on the mortgage, a controversy continues as to whether Cherry was required to pay any monies on a mortgage that was legally, although mistakenly satisfied, in October 2000. Chase's vacatur was not entered into the Pinellas County public records until May 3, 2001. Therefore, contrary to Chase's argument, a genuine dispute of material facts exists as to the validity of the vacatur and lost note during this time period and subsequently the request for Partial Summary Judgment is **denied**. Accordingly, it is:

**ORDERED** that the Motion for Partial Summary Judgment as to Count II, request for Declaratory Relief; Motion for Final Judgment on its counterclaim for foreclosure (Docket No. 30) be **denied.** The request to reestablish the note and mortgage is hereby **granted** and effective as of the date of this order. Cherry will tender all previously escrowed mortgage payments to the Court, unless the parties agree otherwise, within ten days of this order and shall henceforth, tender future monthly payments to Chase as set out in the reestablished note and mortgage.